## Brown *against* Metz.

A vendor of land, who, by the agreement, was bound to make a deed upon the payment of the purchase money, cannot recover in an action of ejectment against the vendee to compel the payment of the purchase money, without having tendered a deed before suit brought.

A vendor of land having by his agreement covenanted to convey, upon the payment of a certain portion of the purchase money, and that portion having been paid, he cannot maintain ejectment against the vendee, to compel the payment of the residue of the purchase money, although he still retains the legal title.

ERROR to the common pleas of *Dauphin* county.

This was an action of ejectment, brought to recover the possession of one hundred and fifteen acres of land, which the plaintiff, as executor under the last will of his father, Samuel Brown deceased, agreed to sell to Daniel Stout, under whom the defendant claimed the possession. The action was commenced with a view to enforce the payment of three bonds, each of the amount of 328 dollars and 57 cents, payable on the 10th of April in each of the three succeeding years 1823, 1824 and 1825, being the balance of the purchase money remaining unpaid, of the land. The articles of agreement entered into for the sale of the land, are in the following words, to wit: "Articles of agreement between James Brown and Daniel Stout, both of the township of West Hanover, in the county of Dauphin, witnesseth, that the said James hath sold, and by these presents doth grant, bargain and sell unto the said Daniel, and his heirs and assigns for ever, a certain lot of land, with the appurtenances, situate in the township aforesaid, adjoining lands of Joseph Allen, James Wilson and others, containing one hundred acres, be the same more or less, and usual allowance. And the said Daniel Stout binds himself to pay, or secure to be paid, unto the said James Brown, or his certain attorney, the just and full sum of 40 dollars per acre, which the same may measure, to be paid as follows, viz., one half of the said purchase money to be paid at or upon the 1st day of April next, the other half to be paid in seven equal yearly payments, to commence on the 10th day of April 1819; said James to give full and peaceable possession on the 1st day of April next, clear of all incumbrances, except the commonwealth; but before the two first bonds are paid the said James binds himself to give Daniel a free deed, out of the land office, or give him security that he will give such a deed, before the third bond is paid; James to leave all the straw and dung on the premises, and have liberty to take away the corner cupboard; Daniel to have the grain in the ground; James not to suffer any green wood to be cut. In witness whereof the said parties have set their hands and seals, the 27th day of December 1817."

From the evidence given on the trial, it appeared that the first half of the purchase money was paid, or accounted for, by Stout, on or about the 6th of April 1818, and that he then gave his bonds, with John A. Stout as a co-obligor therein, to James Brown alone, to secure the payment of the residue, according to the terms of their agreement, and, at the same time, received possession of the land from the plaintiff, as also his bond, executed in conjunction with Samuel Brown, his brother, and Abraham Fackler, as co-obligors, conditioned for delivering to Daniel Stout, " a free deed, out of the land office of Pennsylvania, for one hundred and fifteen acres," (which, it would seem, was the real number of acres in the lot sold), on or before the 10th of April 1821. Samuel Brown and Abraham Fackler were also named as executors with the plaintiff, in the will of Samuel the testator. After the death of the testator, Samuel joined James in proving the will and taking out letters of administration, but died after the sale of the land, in 1823. Abraham Fackler did not join, nor act at any time as executor, though he never renounced, but died, as it is said, since the trial of this suit. The authority in the will, to sell the land, is given " to the executors thereinafter named," whereby the testator further " authorizes his executors, or the survivors of them, to sign, seal, execute and deliver, such conveyance or conveyances as shall be necessary to convey his title or titles to his real estate, when sold to the purchaser or purchasers thereof, or any part thereof." Some time after the commencement of this suit, and before the trial of it, a deed, executed by the plaintiff alone, Abraham Fackler, being then in full life, conveying the land to Stout, or those claiming under him, was filed in the prothonotary's office, which is the only deed of conveyance that ever was executed or offered, under the articles of agreement. The first four of the bonds, given to secure the payment of the second half of the purchase money, which became payable on the 10th of April, in the years 1819, 1820, 1821 and 1822, were paid off, and, to compel the payment of the remaining three, this suit was brought.

The court below (Blythe, President) was of opinion that the plaintiff was not entitled to recover, upon the facts in evidence, and so instructed the jury, who found accordingly.

*J. A. Fisher* and *George Fisher*, for plaintiff in error, cited Smith v. Webster, 2 *Watts* 478; Stokely *v.* Trout, 3 *Watts* 163.

*M' Clure*, for defendant in error, cited Heron *v.* Hoffner, 3 *Rawle* 393; Eckert *v.* Eckert, 3 *Penns. Rep.* 349 ; Southerland *v.* Purry, 2 *Penns. Rep.* 145; Bower *v.* Kauffett, 7 *Serg. & Rawle* 74; 4 *Wheat.* 296.

The opinion of the court was delivered by

GIBSON, C. J.—In the course of the argument, this action has been called a substitute for a bill in equity; but there is nothing peculiar

[Brown v. Metz.]

in its principles. Its purpose is, doubtless, to produce the fruit of a bill by compelling the vendee to pay or turn out; but it is effected by moving in an opposite direction. What approaches much nearer, in its principles, to a bill for specific performance, is an action of ejectment, founded with us, on the contract of sale with a view to execute it by delivering the land in pursuance of it. An ejectment founded, like the present, on the legal title remaining in the vendor, is prosecuted ostensibly in disaffirmance of the contract which, adding nothing to the force of his right, is set up, if at all, on the other side, as ground of injunction. In what circumstances, then, does equity forbid such a proceeding at law? It may be affirmed that the vendee has a right to control the legal title wherever he has a right, by the contract, to call for a conveyance of it; and that he may not be dispossessed by means of it, where it is, in every respect but a formal surrender of it, his own. The vendor may put it in motion where he has a lien on it; but not to enforce the payment of purchase money for which it was not retained as a security. It will be found that no decision has carried its efficacy further. Where an administration of equity through chancery forms, gives relief directly on the contract, the less efficient remedy on the title is not resorted to; and the only cases in which an injunction to restrain the action of ejectment has been decreed, are those of repeated and vexatious litigation for the trial of conflicting titles—a subject which belongs to a different head of chancery jurisdiction. It is to the scant materials afforded by the decisions of our own court, therefore, that we are to look for principles of relief applicable to an ejectment against a vendee. The general rule is undoubtedly as it has been laid down in Snyder v. Wolfley, 8 *Serg. & Rawle*, 332, that a plaintiff having a title to recover at law, may tender satisfaction of an equity at the trial; but that a tender of every thing in the nature of a condition, must precede an action on an equitable title, yet it may be affirmed, on incontestible principles of equity, that a wrongful detention of the title, will not enable the vendor to recover on it. Where the terms on which he agreed to part with it have been fulfilled, the formal existence of it in him will be disregarded, and he be thrown upon the securities to which he trusted. It will be perceived, therefore, that the present is not a question of tender, but a question of right. In Moody v. Vandyke, 4 *Binney* 31, the depositaries of the title had not contracted at all. They prosecuted their ejectment adversely to a sale by administrators *cum testamento annexo* under a power in the will to sell for payment of debts, which they had not capacity to execute; and it was held that the money raised and paid away in ease of the land, might be tendered at the trial. It will be perceived, therefore, that the defendants had not even colour of right to call for the title, their equity extending but to reimbursement. In Smith v. Webster, 2 *Watts* 478, the vendor was authorised, by the terms of the contract, to hold the title as a security for the purchase money; and he was conse-

quently allowed to use it as·an engine of specific performance without a previous tender. But in Southerland *v.* Purry, 2 *Penns. Rep.* 145, the vendor having covenanted to convey, as soon as the land office should be opened, and the vendee, to pay as soon as the conveyance or security for it should be delivered, it was held that a tender should have preceded the action. The rule of these decisions—and they comprise all that is to be found on the subject— seems to be that the vendor may avail himself of the title while he has a lien on it. The difficulty is to reconcile Southerland *v.* Purry, in which the vendee had covenanted to pay, on delivery of the title, to Smith *v.* Webster, in which the vendor had covenanted to convey, on payment of the purchase money—a difference, apparently but in words, as performance was to be simultaneous in each. The distinction on which the first is sustainable, if at all, was not overlooked, for the defendant was considered to have got the legal title; yet, in that aspect, it would seem that an action of ejectment could be maintained against him on no ground whatever. The truth is, the time of the tender was not the principle difficulty, but whether a tender was necessary at all; and the assertion that a deed of consummation ought to have preceded the action, was probably an inadvertence. But where the vendor has not a lien on the title, the most obvious principles of right require that the detention of it be not turned to the injury of him who is entitled, by the terms of the contract, to call it in. In the case for decision, though there was not an express covenant to convey, at a particular stage of the payments, the vendor had contracted "to give a free deed out of the land office," at the furthest, before the third bond should be paid; and having the title vested in him by warrant and survey, he could fulfil his covenant but through a conveyance, whether by procuring the patent himself, or putting the vendee in a condition to procure it. At the payment of the third bond, therefore, the vendee became the owner of the title, and, in contemplation of equity, clothed with power to control· the use of it, the recourse of the vendor being restricted to his other securities. All the assignments of error are resolvable into this point; and it is entirely clear on the evidence, that the plaintiff was not entitled to recover.

KENNEDY, J.—Whether the sale of the land, being made in the first instance, only by one of the executors, and the transactions afterwards in regard to it, tending to show the subsequent acquiescence or approval of it, by the other executors, be good or not, is a question which has not been raised, and, therefore, need not be decided: But several errors have been assigned, which, taking the sale of the land to be good, may all be disposed of by answering the following questions, to wit: 1. Was the plaintiff bound by his agreement to execute a deed of conveyance to the vendee for the land? 2. If he was, when was he bound to do so, according to the terms of the agreement? 3. Can he recover in this action without having ten-

dered such deed before the commencement of it?    And 4.   If he cannot, would he, after having tendered such deed, be entitled to recover the land in a new action commenced subsequently, if the balance of the purchase money should still remain unpaid?

As to the first question, we think it plain from the whole tenor of the articles of agreement, that they must be regarded as executory merely; and that it was not intended by the parties thereto, that the title which the testator had for the land at the time of his death, should thereby pass immediately, and become vested without more in the vendee.   This is clearly evinced by several provisions contained in the articles.   For instance, the covenant on the part of the seller to deliver the possession of the land on the first of the following April, without a previous reservation of it till then, is inconsistent with the idea and the purpose that the articles of agreement were considered as a deed of conveyance, passing, at once, the title to the bond, from the seller to the purchaser, which would have carried with it the right to have taken the possession of the land immediately: But this covenant to deliver the possession without any previous reservation of it, shows very clearly that the parties did not consider the previous words of sale in the agreement as sufficient to pass any right that would authorise the purchaser to take possession of the land before he paid the purchase money; but this covenant entitled him to receive it when he paid the one half, and gave his bonds to secure the payment of the remaining half.   The giving of the bonds, it is true, is not provided for by an express covenant on the part of the purchaser, but that such was the understanding of the parties is plainly inferrible from the words of the covenant on the part of the seller to give a deed; which are as follow, to wit, " but before the *two first bonds* are paid, the said James Brown binds himself to give Daniel a free deed out of the land office, or give him security that he will give such a deed before the *third bond* is paid."   And although bonds are not mentioned in any previous or subsequent part of the agreement, yet in order to make sense of the agreement, the bonds, here spoken of, must be understood as bonds then within the contemplation of the parties, that were to be given to secure the payment of that portion of the purchase money which was to be paid by instalments annually; and which, as it appears, were accordingly given.   But that a deed of conveyance was to be executed by the plaintiff to the purchaser, is still further manifested by a fair and reasonable construction of this covenant just recited, which is, " to give Daniel a free deed out of the land office."   The words used here are not very explicit, it is true, nor well suited to give a perfectly distinct and clear understanding of the meaning of the parties, but still, when taken in reference to the subject matter of their contract, they may serve to show, with reasonable certainty, what was intended.  In the clause immediately preceding, is contained the covenant of the plaintiff to deliver the possession by the 1st of April then next fol-

lowing *clear of all incumbrances except the commonwealth.* This taken in connection with a covenant to deliver at a subsequent period the *free deed out of the land office,* shows clearly that the patent for the land had not then been obtained from the commonwealth, and that she had a claim upon the land, which was to be paid before it could be had. This being the case, it cannot be doubted that the latter of these covenants was inserted for the purpose of creating an obligation upon the plaintiff to procure the patent at his own expense, and to make it available to Stout, the vendee; but as the plaintiff was to obtain the patent, it was proper enough as well as more convenient for him, to retain the title, which he derived under the will of the testator to the land upon which the patent was to be founded, in himself, until he should obtain it, and then render it effective to Stout within the time prescribed, by making a deed of conveyance from it to him for the land. The words will very well bear this construction, and it appears to be more consistent than any other with what must necessarily have been the main object of the parties, which was to give to the purchaser an indefeasible title in fee simple for the land, before the third bond became payable.

This disposes of the first question, and brings us to the second, which has been substantially answered in what has been said on the first. Indeed, if the first has been rightly answered, there is no room to doubt in regard to the time at which the deed was to be made to Stout; for, by the express terms of the agreement, it was to be " before the third bond was paid," which meant the third instalment of the second half of the purchase-money, which fell due on the 10th of April 1821.

We next come to the third question, which appears to have been decided by this court in the negative, in Southerland *v.* Purry, 2 *Penns. Rep.* 145. It seems to have been the only point made in the cause. There the plaintiff, after having received a part of the purchase-money, commenced his action, which was an ejectment, without previously making and tendering a deed of conveyance to the purchaser for the land, and it was held that he could not recover, because, by the terms of the agreement of sale, the residue of the purchase-money was not to be paid until the deed should be made. To have sustained the action under these circumstances, the court thought would have been in effect permitting the plaintiff to violate his covenant in that behalf expressly made with the defendant. which, according to our system of jurisprudence and the organization of our courts, ought not to be suffered, though the plaintiff be invested with the legal title to the land. The case of Smith *v.* Webster, 2 *Watts* 478, however, has been referred to as establishing an affirmative answer to the question here, and as militating against the doctrine laid down in Southerland and Purry; but we do not think so. They are perfectly consistent with each other. In Smith and Webster, according to the terms of the agreement between the parties, the deed of conveyance was not to be made to the purchaser,

v.—w

until he paid the whole of the purchase-money, and, therefore, it was held to be in no wise contrary to their agreement, to permit the seller to maintain his action of ejectment, for the purpose of compelling the payment of that, without which, the defendant had no colour of right, either in law or equity, to withhold the possession of the land from the plaintiff.

It is true that a distinction is there mentioned between a personal action, brought by the seller, founded upon the contract for a breach of it, by not paying the purchase-money, which can only be maintained against the purchaser himself or his legal representatives, and an action of ejectment, which must be against whomsoever is in the actual possession of the land at the time, and is maintained exclusively by the seller upon the ground of his being still invested with the legal title to the land, and his not being bound by his agreement to part with it until he shall be paid the purchase-money; and that in the first action where the payment of the purchase-money and the making of the deed, are, according to the agreement, to be simultaneous acts, a deed must be made and tendered by the seller before the institution of the suit, though not requisite in the ejectment, for the reason already mentioned that the latter is not founded upon the agreement; but in no case is it said that even this latter action can be maintained in violation of the rights of the vendee vested in him under the agreement.

Although in the answers given to the first three questions it has been shown that the plaintiff is not entitled to maintain this action, it may perhaps prevent any future and vain attempt by a subsequent ejectment to recover the possession of the land, to answer the fourth question.

According to a proper construction of the agreement, it has been shown, that the plaintiff was bound to have made a perfect legal title to the vendee for the land, before the third bond or instalment of the last half of the purchase money became payable, which was on the 10th of April 1821. And as the plaintiff was not bound to part with his title, until after the first two bonds became payable, and were paid, it might not be unreasonable to consider him as having a right under the agreement to retain it, as long as these bonds were unpaid, but beyond these the terms of the agreement would certainly not warrant. It appears, however, that not only these two bonds have been paid by Stout, but likewise the next two succeeding, thus making good the payment of all the instalments up to the year 1822 inclusive. This being the case, it is evident that the plaintiff was not only bound in law by his covenant, but in equity and good conscience too, seeing no good reason has been offered for his not fulfilling it, to have parted with the title to the land, by making a deed conveying it to his vendee long before this suit was instituted. If the plaintiff had performed his covenant in this respect, it is certain that he could not thereafter have maintained an action of ejectment for any purpose whatever. But here, where

[Brown v. Metz.]

we have no court of chancery, and equitable principles, combined with legal, form the rule of decision in our courts of law, the defendant as against the plaintiff, is entitled to claim the benefit of the principle of equity which considers that as already done against him who ought to have done it, and gives to the party in whose favour it was to have been performed, all the advantages he would have been entitled to claim, in case it had actually been done. Thus the defendant is, and will be, in time to come, as completely protected against a recovery in ejectment by the plaintiff, as if he had made a deed of conveyance to him in conformity to the contract. This principle has been laid down and recognized uniformly by our courts and judges. Lessee of Moody *v.* Vandyke, 4 *Binn.* 41; Vincent *v.* the lessee of Huff, 4 *Serg. & Rawle* 301; Griffith *v.* Cochran, 5 *Binn* 105. And by virtue of it, in Bossler *v.* Niesly, 2 *Serg. & Rawle* 352, it was held that the purchaser of land under an agreement, who, according thereto, was to have the possession upon payment of a certain portion of the purchase-money, might, after having paid the same, maintain his action of ejectment against the vendor, without paying or tendering the residue of the purchase-money. But in the present case the purchaser has paid all that he was bound to do, and now, according to the terms of the agreement, to give him not only a right to the possession of the land, but to the legal title in fee, clear of all incumbrances. Now, if the plaintiff had made this title as he ought to have done, the land would have been discharged from all claim for, and on account of, the residue of the purchase-money, so that there would not have remained a lien, even in equity, for it; because, by the terms of the contract, it was not intended that any should exist thereafter. The bonds of the purchaser, which were given with a surety therein, were considered sufficient, and were to be the only security that the plaintiff, according to his agreement, was to have. It, therefore, can neither be equitable nor just to permit him to depart from his agreement, and to take advantage of his own wrong and non-fulfilment of it. It may prove seriously injurious to purchasers not to have their contracts for the purchase of lands performed punctually, according to their tenor, by the vendors; and nothing could be more unjust, as well as impolitic, than to give to the latter advantages or rights which they would have no right to claim, had they performed their agreements as they were bound to do. Upon the principle of equity already mentioned, which places the defendant in the same situation, in regard to the plaintiff, as if the latter had done all in favour of the former that by the terms of his contract he was bound to do, it follows that the plaintiff cannot be considered as being vested with any title or right that will enable him to maintain an action of ejectment, at any time hereafter, for the land.

Judgment affirmed.