BIDDLE v. MOORE, MARTIN et al.

MOORE, MARTIN et al. v. BIDDLE.

A., by the articles for a dissolution of partnership with B., agreed to convey certain land to B., in consideration of B.'s assuming and paying the debts of the concern, except certain ones specified, which A. agreed to pay on being furnished with notes of third persons to a certain amount. The land was subsequently sold by the sheriff, as the property of B. *Held*, to be competent for A., by an equitable ejectment and conditional verdict, to enforce payment of the purchase money due himself, the debts of the firm, and those debts which he had agreed to pay on conditions not performed by B.

Also, that debts of the firm which might have been barred by a plea of the Statute of Limitations, could also be recovered; the debtors themselves not objecting on that account, that being a personal privilege.

Knowledge of the intention of the sheriff to sell as the property of B., coupled with the fact of A.'s presence at an offer to sell, and his absence from the sale by the advice of counsel, without public notice at any of the sales, will not affect his right of recovery.

The act of Assembly giving chancery powers to the courts, does not oust that jurisdiction as theretofore exercised under the forms of common law proceedings.

Purchaser of the right of vendee under articles, has by the retention of the legal title constructive notice of the vendor's equity, which may have arisen by the express terms of the articles, or by reason of the non-performance of the vendee's stipulations.

And such vendor is not bound to attend a sale by the sheriff as the property of his vendee, and give notice of his claim.

The admission of a debtor will be evidence of a debt, and will also take it out of the Statute of Limitations as against a purchaser of lands, out of which the creditor has a right of satisfaction by an agreement between the debtor, the vendor of such purchaser. Per Rogers, J.

Knowledge of the existence of a claim on the land, is binding on a purchaser not making proper inquiries about it.

IN error from the Common Pleas of Cumberland county.

*June* 10. This was an ejectment by Biddle, to enforce by a conditional verdict, as stated in a written offer filed on the trial, the payment of certain debts due by himself and his vendee, John Moore, under whom defendants claimed, which, on dissolution of the partnership between them, Moore had agreed to pay; and also to enforce payment of the purchase money due under the articles.

The property claimed in the suit consisted of the Big Pond Furnace estate, which had been vested in Moore & Biddle, as tenants in common; and a right to dig ore in other land, which was in Biddle solely.

By the articles of dissolution it was agreed, that the estate of Biddle, claimed here, should be vested in Moore on certain conditions. The articles ran thus:—

"Agreement made the 21st day of January, 1839, between Edward M. Biddle of the one part, and John Moore of the other part,

witnesseth, that the partnership heretofore existing between the said parties, under the name of 'Moore & Biddle,' is hereby dissolved; and the said E. M. Biddle doth hereby agree to sell and convey to the said John Moore all his right, title, and interest of, in, and to the Big Pond Furnace, and all the rights, lands, and tenements and appurtenances, ore banks, privileges, &c., thereto in any manner attached, viz., pig-metal, iron, stock, horses, wagons, carts, and implements thereto belonging and used in the ordinary business of said furnace. Also the ore bank conveyed by Abraham Seevers to E. M. Biddle, called the Pond Bank, all debts due to said firm of Moore & Biddle, and any and every property, real, personal, and mixed, belonging to said firm.

"In consideration whereof, the said John Moore doth hereby covenant and agree, to pay and assume the responsibility of all the debts, dues, and demands which are now due and owing by the said Moore & Biddle, or for which they are in any way liable, except as follows: The sum of $2000, (a part of a debt,) due to the Southern Loan Company, Philadelphia; the sum of $1000, or thereabouts, due to the borough of Carlisle; a debt due to N. W. Woods, of about $1200, and now in the hands of Charles B. Penrose, Esq., for collection; also a debt due the Carlisle Savings' Fund Society, for $800; amounting in the whole to about $5000; which said several debts the said E. M. Biddle doth hereby covenant and agree to pay; and to enable him to do so, he, the said E. M. Biddle, is first to receive the notes of Jennings & Craig, of Philadelphia, and of C. Sellers & Sons, of Philadelphia, (for the payment of pig-iron, part of which has been delivered them, and part yet to be delivered, per contract,) for the above amount of $5000. The proceeds of the notes thus to be received shall be, by the said E. M. Biddle, applied to the payment of the aforementioned debts in full, so as to discharge the said John Moore from any liability from the same; and in case of the failure of either Jennings & Craig or Sellers & Sons to pay their paper at maturity, the said E. M. Biddle is not to have recourse to the said John Moore to make good any part of the same; the said E. M. Biddle assuming the responsibility individually for the amount, as soon as he shall receive the forementioned notes. And the said John Moore and Edward M. Biddle do mutually covenant, that neither one nor the other shall continue to be liable for the debts payable and due by the firm of Moore & Biddle, for a longer time or period than the first day of April, 1840; that before that time each shall either pay or arrange the debts payable by him, so that the other shall be discharged therefrom. And the said John Moore does further covenant

and agree, to pay to the said E. M. Biddle the sum of $2000, as follows: $1000 payable on the 1st April, 1841, $500 on the 1st April, 1842, $500 on the 1st of April, 1843; and upon the payment of the first thousand by the said John Moore, then the said E. M. Biddle is to make a general deed of conveyance to the said John Moore, his heirs and assigns, of all his interest in the Big Pond Furnace, lands, and estate; the said Moore also agreeing to give him bonds and security for the future payments. On the execution of this agreement, said Biddle is to deliver up to said Moore all possession, papers, &c., connected with the Big Pond Furnace estates.

"If the notes of Jennings & Craig and C. Sellers & Sons should not amount to the debts which E. M. Biddle hereby agrees to pay, then the said John Moore hereby agrees, that he will pay such balance as may remain after the appropriation of the amount of said notes. Witness the hands and seals of the parties, the day first written E. M. BIDDLE, [L. S.]
JOHN MOORE. [L. S.]"

Pursuant to the agreement, two notes of C. Sellers & Sons, at six months—one of February, 1839, for $1100, and the other of 18th March, for $837 36—were delivered to Biddle. The latter of these was applied in payment of the debt due the Savings' Fund, mentioned in the articles. The former was discounted in bank, and the proceeds applied to the borough of Carlisle debt, also in the articles. Judgment was had against Biddle on the endorsement by the bank, in which Moore entered bail in stay of execution. The debt was paid out of the proceeds of Moore's property, under a sheriff's sale subsequently mentioned.

The plaintiff gave in evidence a judgment against Moore & Biddle, on a note of Jennings & Craig, for $750, in 1845, by the Bank of the United States, by which it had been discounted for the use of Moore. This debt was one which the plaintiff sought to recover in this action, by specific direction, in the conditional verdict.

The defendant's first exception was to the admission of evidence of a judgment by Keller against the firm, in 1844, for $55 86, paid by Biddle.

The plaintiff's first exception was to the rejection by the court of an account between Woods and the firm, and also the evidence of Woods himself to prove a debt due from the firm. Evidence of this debt, embraced in the agreement, due from the firm over and above the payment by Moore as hereafter stated, and a settlement by Moore & Biddle, February 9th, 1844, of the amount of the consideration

due under the agreement, coupled with proof, that the debts now offered to be proved (one was admitted, as will presently be seen) were embraced therein, was also rejected, and constituted the third exception of plaintiff. It seemed, that this was a different one from that which Biddle was bound by the articles to pay, as it was subsequently proved that that particular debt was paid by Moore.

The defendant's second exception was to the admission of proof of a debt due from the firm to Barnitz. Suit had been brought, but there was no narr, &c. The objections were for this reason, and also that it was controverted and could not be tried in this suit. This was one of the debts for which, specifically, recovery was had.

Moore, the defendant, was a tenant of John Moore. The real defendants were Martin and Seevers, who claimed title as purchasers at sheriff's sale. The Southern Loan Company having brought suit against J. Moore, in 1841, obtained judgment and issued execution. In 1843, a *venditioni* issued for the sale of the property now in question, with many others. Some of the latter were sold, and the sale adjourned. Another partial sale took place in November, and in December the furnace, &c., was sold to the real defendants here.

They then gave evidence of knowledge by Biddle, that the property was advertised as the property of Moore, and also that Biddle was present at the first attempt to sell, and gave no notice of any claim. There did not appear any direct evidence that he was present at the time the sale was affected.

They also proved the application of the proceeds to the payment of the judgments of the Southern Loan Company, the balance due the borough of Carlisle, and to the residue of the claims which Biddle agreed to pay but did not; that the particular debt of Woods mentioned in the agreement was paid by Moore.

The plaintiff then proved, that under the advice of his counsel, he had abstained from giving notice of his claim at the sale, as the amount was uncertain, and that he was directed not to come to the sale, by his counsel.

It appeared pretty certain from the evidence, that Biddle was not present. C. Moore, the defendant, and tenant of J. Moore, stated, he had some conversation before the sale, with Martin, who spoke of Biddle's claim to the works; and also that he had a conversation with Seevers, before the sale, and that he, Seevers, was aware Biddle had a claim; that afterwards he said, he knew all about it, and did not care about it. The witness also said, he did not fully explain the claim; did not know the amount between the parties; did

not know what Seevers's and Martin's understanding of Biddle's claim was; they did not tell him what it was. His character for truth was the subject of much evidence.

The plaintiff's and defendants' points, and the answers by HEPBURN, President J., contain the charge of the court, and the grounds on which the parties respectively relied; and so far as excepted to, were:—

The court refused the instructions prayed for in the defendant's 3d, 4th, and 5th points, viz.:

" 3. As the plaintiff cannot recover the privilege of the ore bank, as conveyed by Abraham Seevers to Edward M. Biddle, he cannot thus separate the property into parts, so as to render both useless in separate hands, and enforce specific execution as to a part by ejectment.

" 4. As all the debts are paid enumerated in the articles of agreement to have been paid by Edward M. Biddle, this ejectment cannot be sustained to enforce the payment of any other debt of the firm assumed to be paid by John Moore.

" 5. No conditional verdict can be rendered in this action in favour of the plaintiff, to be released on the payment of any such debts to the respective creditors, nor to Edward M. Biddle, nor generally according to plaintiff's proposition."

6. Withdrawn.

" 7. The defendants cannot in this suit be called on to investigate and try all claims which the plaintiff may choose to present against the firm, without previous notice of the existence of such claims. They are not and cannot be prepared for such purpose; and since the first of April, 1840, that is a matter between the creditors and John Moore, over which Edward M. Biddle has no control; and any determination in this suit of sums supposed to be due to creditors would not be binding on them; nor would it facilitate the recovery or add any new security for their claims; for the estate of Edward M. Biddle, if he have any, is as liable without, as with a recovery in this action; the payment of such debts cannot therefore be enforced in this suit."

Answer.—" The first two sentences of this point we assent to; but we cannot instruct you, that the debts due by the firm of Moore & Biddle, when this agreement was made, are matters in which the creditors of that firm and Moore have the exclusive interest. Edward M. Biddle has an undoubted interest in being relieved from the debts of the firm, against which he had provided in his article of sale to Moore; and he can by this action enforce the payment of

such of them as he has been legally called on to pay, such as suits have been brought against him for, as part of the consideration money for which he sold this property. But the defendants are not, nor do we think they could be, called upon to pay any, and every debt, that existed when this agreement was made ; and which have since become barred by the statute of limitations, and which have never been legally or adversely demanded from Edward M. Biddle. Debts of this character, when offered in evidence, were rejected by the court, and consequently are not read before you. We said then, and now repeat, that no voluntary payment, or assumption by Edward M. Biddle, of debts assumed by John Moore, under their article of agreement, would enable Biddle to recover them in this action ; which is for the specific execution of that contract. If Biddle chose to vary the terms of it, by assuming the payment of debts he was not compelled to pay under it, he cannot enforce their repayment against the land in an action for the specific execution of the original agreement, after the property has passed into other hands, and after those debts are barred by the statute of limitations. The sums supposed to be due, in the language of this point, would not be binding on the plaintiffs, if they choose to institute personal actions for their recovery. But so far as the evidence is before you, we have not rested on supposition. One of the claims has been liquidated by an adverse suit and judgment actually entered. The other is fixed by the plaintiff's claim in his suit for its recovery, and the amount, as proved by his counsel, not disputed. A recovery here might or might not facilitate a recovery in those suits, or add a new security to the creditors ; but whether it does so or not, is not the main question in this cause. It is the rights of Edward M. Biddle that are sought to be protected here ; and your verdict, if in his favour, though it may not add a security, or facilitate a recovery by the creditors of Moore & Biddle in actions against that firm, will unquestionably secure Biddle from any positive loss on account of these debts, by compelling their payment, or restoring to him his portion of the property sold, if they be not paid within the time limited by you in your verdict. The estate of Edward M. Biddle would be liable for the judgments obtained against him and Moore, but certainly not to the extent it would be, if a recovery is had by him in this suit. We cannot instruct you, that the payment of the debts, so far as admitted in evidence, cannot be enforced in this action. On the contrary, we think they can, and so instruct you."

Eighth point.——" If the plaintiff should obtain a verdict in his favour to be released on the payment of a large sum of money in a given

time to creditors; if not paid in the time specified, the title would become absolute in the plaintiff. He could then contest the claims of the same creditors, and if he should defeat them, he would hold the land in fraud of the rights of the defendants."

Answer.—" We assent to the first branch of this point. But it is out of the power of the plaintiff now to contest the payment of the United States Bank. The sum is fixed by a judgment, and that is binding; and if Barnitz's claim be defeated on a trial, the bond to that extent would be relieved; for the court would, even after your finding, have such a controlling influence over the verdict as to prevent money from being paid on it, that had subsequently been determined wrong and improper. But as to the amount of Barnitz's claim, there seems really to be no dispute; and the evil anticipated, if there be one, seems only to exist in imagination as to what might happen under certain circumstances, rather than what is honestly feared in reference to that particular case."

Ninth point.—" Edward M. Biddle having engaged in his contract with John Moore, that upon the payment to him of the first $1000, on the 1st of April, 1841, he would give him a deed, &c., per agreement; and John Moore having overpaid him in the said sum of $1000, viz., having paid him $1100, with interest, from the 7th of June, 1838, he thus coupled himself to the deed, and is now to be considered in possession of the lands under the deed. The plaintiff cannot therefore recover the possession of the lands in this action. The plaintiff cannot complain of John Moore's not having given bonds and security, because he has never got a deed, nor was one ever tendered."

Answered in the negative.

Tenth point.—" By the agreement of the parties, Edward M. Biddle could in no event hold the legal title as a means of enforcing payment of more than the first instalment of $1000 to him; and that being paid, he cannot recover the bonds in this action. For the performance of the residue of the contract, the parties stipulated the manner of performance, and the plaintiff can only look to his contract and an action upon it; and unless the plaintiff tendered a deed before suit brought, he cannot recover."

Answered in the negative.

Eleventh point.—" If the jury believe the testimony of Carson Moore, that he had conversations with Sheriff Martin and with Abraham Seevers, before and after the sheriff's sale, about Mr. Biddle's claim and about the amount of the partnership debts for which the property was liable, as he detailed the facts in evidence; and he did

not know, nor inform them of the nature of the claim of Edward M. Biddle, whether it was a lien on the land or a title to it, and if a title, under what circumstances held—nor the amount—it would neither constitute notice to Seevers and Martin, actual or constructive ; and so would not defeat the defendant's defence in this particular, nor enable the plaintiff to recover. To affect the defendants with notice, the law requires, that it must have been given by the party interested in the property, and in reference to the sheriff's sale of it. Vague reports from persons not interested in the property, nor knowing the facts, will not affect the purchaser's conscience ; nor will he be bound by notice in a previous transaction which he may have forgotten. A mere assertion of Carson Moore that Mr. Biddle had a claim or encumbrance, &c., was insufficient to affect the purchasers with notice."

Answer.—To affect a party with notice, it must be given by one interested in the property, and in reference to a sheriff's sale of it. Vague reports from persons not interested in the property, nor knowing the fact, will not affect the purchaser's conscience, nor will he be bound by notice in a previous transaction, which he may have forgotten. But if notice of facts, in reference to the title of a tract of land about to be sold by the sheriff, be given by the tenant in possession of that property to the person who contemplates buying it, and he fails or neglects to follow it up by proper inquiries, at the proper place, he acts upon his peril, and must reap the consequences. The mere assertion of Carson Moore, that Mr. Biddle had a claim or encumbrance, was insufficient to affect the purchasers with notice of that claim ; but if they knew of the claim, and so stated, it is sufficient ; and if knowing it, they failed to make the necessary inquiries in reference to it, so as to perfectly understand it, it is their own fault, and they have nobody else to blame.

Twelfth point.—" If Edward M. Biddle was present at the sale and gave no notice of his claim, or, if not actually present, he resorted to any means to procure the purchase to be made in ignorance of his claim, he cannot recover in this action."

Answer.—This is the law.

(This was not the subject of exception, but is noticed in the opinion of this court.)

Thirteenth point.—" If the property in dispute was levied on and advertised as the property of John Moore, after the terms of dissolution published, and offered by sale by public outcry on the 14th of October, 1843, by the sheriff, and on the 4th of November, in the same year, as the property of John Moore ; and Paul Martin and Abraham

Seevers were present; and Edward M. Biddle was present when the property was offered, and talked on the subject to Mr. Todd, as testified, and no notice was given by Mr. Biddle of any claim upon the property, and the property was afterwards advertised and offered, and cried for sale in the same way; and Edward M. Biddle knew that it was to be again offered for sale, and he absented himself at the time of sale appointed, for the purpose of avoiding giving notice of any claim he had; and he did nothing by act or deed to repel any presumption that would arise from his presence at the former attempt to sell: if Abraham Seevers and Paul Martin became the purchasers under such circumstances, the plaintiff cannot recover."

Answer.—"The case of Epley *v.* Witherow, we think, has gone as far as the law will ever go in Pennsylvania. That case falls short of the prayer of the defendants in this point. Entertaining the opinion expressed, we decline giving you the instructions desired."

Plaintiff's points.—3d. "That the plaintiff, Edward M. Biddle, had a right to retain the legal title of his interest in the property sold, as a security for the performance of the contract by John Moore; and that this action is the proper form to recover the property, or secure the payment of the consideration money."

Fourth point.—"That Edward M. Biddle was not legally, or in duty bound to attend the sale of the property by the sheriff, or to give notice of his title; and if he was not actually present when the property was sold, he is not at all affected by the absence of actual notice."

Fifth point.—"That the plaintiff is entitled to a verdict; to be rendered upon the payment of the purchase money and debts due according to the following calculation:"

The instalments of $1000 and $500 respectively due the 1st of April, 1841, 1842, 1843, with interest to January 13, 1846, (apparently the day of trial.) The debts due Keller, Barnitz, and the Bank of the United States, allowing a credit for the amount of the Sellers' draft paid out of Moore's property, with like interest.

Answer.—"If under the evidence in the case, as applied to the law stated to you by the court, you find for the plaintiff, he is entitled to your verdict to be released upon the payment of the sums stated in this point in the manner there indicated, (if the calculations are right;) within such reasonable time as, under all the circumstances of this case, you think will do justice between the parties."

The jury found for the plaintiff, &c., "to be released on the payment to him of $1025 99, and $150 92 to Charles Barnitz, and $1060 23 to the trustees of the Bank of the United States, on the 1st

of July, 1846, with interest from this date, with six cents damages and six cents costs."

The plaintiffs assigned for error the non-admission of their evidence. The defendants, the admission of the evidence as to Keller and Barnitz's claims, and the answers to plaintiff's points; the answer, or refusal to answer, defendant's points given above; and also that the verdict was illegal, as it affects and embraces the interests of strangers to the action.

*Reed,* for plaintiff in error, contended, that the plaintiff was entitled to no verdict; but certainly none such as he himself asked for, and as the court instructed the jury to find.

That this form of action was adopted from necessity only, (8 Serg. & Rawle, 418,) and it had been the subject of much complaint, that proper powers were not given to obviate it. This was now done, and the courts could proceed in a regular manner by bill in chancery.

That a statutory remedy having been provided, it must, under the act of 1806, be followed, and the former anomaly abandoned, for there cannot be concurrent *remedies* of this character in law and equity. 3 Wheat. 187.

That on the settled principles of our law there can be no recovery; for Moore was to pay but $1000 before he got his deed, and that amount having been paid, he is to be considered as having already the legal title, and consequently that cannot be used against him for any purpose. Brown *v.* Metz, 5 Watts, 164; 2 Penna. 145. And though this amount was paid after suit brought, there could be a recovery for costs only. 10 Watts, 222; 5 Watts, 272.

That under any circumstances this verdict was defective, as it was in favour of persons not parties, which cannot be allowed; 4 Bla. Com. 377; 2 Atk. 51; 3 Johns. Ch. Rep. 311; for those persons would not be bound by this proceeding.

These creditors have no right to go into chancery; for until they have obtained a verdict and judgment at law, they will not be recognised there. 1 Eq. Dig. 339, 346—349, 412; 4 Johns. Ch. Rep. 671; 2 Johns. Ch. Rep. 283, 141—144.

The ejectment could only be used where it would restore the parties to their original position, (7 Watts, 139,) which cannot be done here.

That the court erred as to the effect of want of notice. The presence of the party at the offer to sell as the property of Moore, without giving notice, coupled with his knowledge of the intention to sell in that way, raised a presumption of his acquiescence.

*Watts* and *Wm. M. Biddle*, contrà.—The cases of Sutherland *v.* Perry, 2 Penna. Rep. 145, and Brown *v.* Metz, cited by the counsel for Moore, are inapplicable to this case. In Brown *v.* Metz, the vendor was bound to make a deed before the third bond was payable, and it was held, after the payment of four bonds, that the vendor could not recover without having tendered a deed before suit brought. Both these cases proceed on the principle, that the vendor having covenanted to convey upon the payment of a certain portion of the purchase money, which was paid, the detention of the title by him was wrongful and against his covenant. But here Biddle has performed his covenants; and Moore, the vendee, has violated his in every particular. That a plaintiff having a title to recover at law, may tender satisfaction of an equity at the trial, is established in Snyder *v.* Wolfley, 8 Serg. & Rawle, 332. He may hold the title as a security for the purchase money, and use it as an engine of specific performance, without a tender. Smith *v.* Webster, 2 Watts, 478. As to the objection to the suit and to the verdict rendered, they cited Lessee of Black *v.* Hepburn, 2 Yates, 333; Stephenson *v.* Clippinger, 5 Watts, 420; Youst *v.* Martin, 3 Serg. & Rawle, 432; Seitzinger *v.* Ridgway, 9 Watts, 496. This ejectment is virtually a bill in equity, entrammelled by forms or technical objections. The court, through the medium of a jury, can do whatever a chancellor could on a bill for a specific performance. In relation to the knowledge of the defendant of the plaintiff's claim, they cited Lewis *v.* Bradford, 10 Watts, 67. Martin and Seevers knew the fact. It had been communicated to them by the tenant on the land. Biddle was not at the sale. This was determined by the jury. There is reason to doubt if he were present at a former time, when the property was offered but not sold; but if he had been, it would not have concluded him. It is said, in Epply *v.* Witherow, 7 Watts, 167, that a purchaser is not bound by a notice in a previous transaction, which he may have forgotten. He cannot, therefore, have the benefit of an estoppel against the owner, for not giving a notice at such previous sale; when he, the purchaser, would not have been bound by it had it been given. The questions on the part of the plaintiff below resolve themselves into this: can Martin have the benefit of the plea of the statute of limitations against such of the creditors of Moore & Biddle as hold claims barred by the statute, if pleaded? In Stub *v.* Leis, 7 Watts, 43, it was held, that in an ejectment by the vendee, on articles of agreement to recover the land, where the vendor makes no objection to the execution of the contract, it is not competent for the defendant, being a terre-tenant, and claiming title, to

set up a defence, that the *plaintiff has not performed his contract* with the vendor.   Then why give the terre-tenant the benefit of the statute, where the partners, who are parties to the agreement of sale, are not disposed to take advantage of it?   Hesser *v.* Steiner, 5 Watts & Serg. 476.   In assumpsit, on a promise to pay the debt of another in consideration of forbearance, the fact, that it was barred by the statute of limitations, furnishes no defence; for *non constat* that it will be pleaded, and the act of limitations can only be taken advantage of by the person to be affected by it.   Martin cannot therefore compel Moore and Biddle to plead the statute.   There is no more hardship in his case, than in that of the person who promises to pay the debt of another.   It is sufficient to show an existing debt; *non constat* that the act of limitations will be pleaded.

*June* 19.   Rogers, J.—This is an action of ejectment, to recover the undivided half part of several tracts of land, composing the Big Pond Furnace, &c., containing about five thousand acres, and also for the ore bank, or right to take ore exclusively on a certain tract of land purchased by the plaintiff from Abraham Seevers.   Plea, not guilty.   Paul Martin, one of the purchasers at a sheriff's sale of the lands sold as the property of John Moore, admitted as defendant.

The following facts contain a general outline of the case.   John Moore and Edward M. Biddle entered into partnership in certain iron-works in the county of Cumberland.   For the purposes of the partnership, they became the purchasers of the property for which the action of ejectment is brought, and by several conveyances, exhibited in evidence, Edward M. Biddle acquired a legal title, as tenant in common with John Moore, to an undivided half of the premises, and an exclusive right to take ore from the land of Abraham Seevers.   The 21st January, 1839, the partnership theretofore existing between Moore and Biddle was dissolved, and by an article of agreement of that date, Moore purchased from Biddle all the property, whether real or personal, held by them in partnership or as tenants in common, and also the right to dig ore as before stated. The article of agreement on which the whole controversy turns, runs thus :   [His honour here stated the article mentioned above.]   The action is brought to recover a verdict for the plaintiff; to be released upon the payment of the consideration money mentioned in the agreement, viz., $2000, and the debts of the firm paid by Edward M. Biddle, or what may remain due and unpaid by Moore & Biddle, and for what they and each of them are still liable.

In Coolbaugh *v.* Pierce, 8 Serg. & Rawle, 418, it is ruled, that

a conditional verdict in ejectment is good; that this action approaches very nearly to a bill in chancery, and from necessity is made to perform the offices of a bill in equity; that the very structure of courts absolutely requires, that they should have the power to impose terms, in order that they may do substantial justice. Nor do I understand the counsel to dispute, that it is the uniform practice in this state to enforce the payment of purchase money by means of a conditional verdict. But the defendant contends, that the plaintiff cannot in this action enforce payment of any claim due the creditors of Moore & Biddle, notwithstanding Moore assumed to pay them. The objection is a specific one, including only the debts due the firm; which, the defendant contends, cannot be taken into consideration in this action. The objection strikes at the root of the case, and denies the plaintiff all remedy in this form.

On this point, we entertain no doubt whatever. A glance at the agreement will suffice to show, that the payment of the debts of the firm is no inconsiderable part of the purchase money; and if so, it falls within the general principle already stated, which is too firmly settled to be doubted or disturbed. Biddle agrees to convey to Moore all his right and interest in the Big Pond Furnace, with the appurtenances, his right to the ore bank, and all the debts; in short, every species of property belonging to the firm, whether real, personal, or mixed. In consideration whereof, Moore covenants to pay all the debts of the firm of every description, with the exception of certain debts enumerated in the agreement, amounting to about $5000; which Biddle agrees to pay, with certain specified funds to be placed in his hands by Moore, for that express purpose. On these terms and conditions, Biddle assumes an individual responsibility for the debts stated. It is further mutually covenanted, that neither of the parties to the contract shall remain liable for the debts of the firm for a longer time or period than the 1st April, 1840; that before that time, each shall arrange or pay the debts payable by him, so that the other shall be discharged therefrom. Moore further agrees to pay to Biddle the sum of $2000; $1000 the 1st April, 1841, $500 the 1st April, 1842, and $500 the 1st April, 1843; and upon payment of the first $1000, and giving bonds with security for future payment, Biddle agrees to convey the premises to Moore.

It is contended, that as Moore paid the $1000, as per contract, and before the 1st of April, 1841, Biddle was bound to give a deed; that equity considers that as done which ought to be done; that therefore the title is so far vested in Moore, as to be an insuperable bar to the plaintiff's recovery. And for this position the defend-

ant relies on Brown *v.* Metz, 5 Watts, 164, in which it is ruled, that a vendor of land having by agreement covenanted to convey upon payment of a certain portion of the purchase money, and that portion having been paid, he cannot maintain ejectment against the vendor, to compel the payment of the residue, although he still retains the legal title. Now, granting the premises, it would be difficult to resist the conclusion, plainly deducible from the case cited. But to the defendant's proposition, two answers are given, either of which is perfectly satisfactory: 1st. It is denied that there is any evidence whatever of any payment on account of the $2000 which formed part of the purchase money: and 2d, admitting the fact to be as alleged, it is contended that Biddle is not bound to make a deed for the premises, until all the debts of the firm are paid.

As to the first position; it is clear, there is no evidence of any payments on account of the contract, except the proceeds of a note of Sellers & Son for $1000, placed in the hands of Biddle for the special purpose of paying certain specified debts, received by Moore himself from the Bank of Carlisle, where it was discounted, and applied by him to the payment of the borough of Carlisle, one of the creditors which Biddle agreed to pay, on being furnished with funds for that purpose. The transaction cannot be twisted by any ingenuity into payment on account of money which Moore agreed to pay Biddle.

But as to the next point; was Biddle bound to make a deed on the payment of $1100, or was it necessary to pay all the debts of the firm before a deed could be demanded? That the latter is the true construction of the agreement, does not admit of reasonable doubt. To be discharged from all responsibility on account of the debts of the firm, would seem to me to have been a governing motive with him for dissolving the partnership, and selling his interest in the property. They constitute a principal part of the purchase money which Moore agreed to pay. And that they were all to be paid, and Biddle discharged from all responsibility before the deed should be made, appears very clearly from the following considerations.

By the express terms of the contract, the debts are to be paid on or before the 1st April, 1840; whereas the plaintiff is not bound to make a deed until the following year, viz., the 1st of April, 1841; and not even then, unless $1000 is paid, and bond and security given for the remainder. Biddle wisely retains the legal title as a security for the faithful performance of the contract, agreeing to trust to personal security only for that part of the purchase money, made payable in 1842 and 1843. As the facts have been disclosed by

the evidence, Moore has not a shadow of right to demand a deed from the vendor. He has utterly failed to comply with his agreement, and consequently has no defence to the action, either in law or equity.

But may substantial justice be done in this action by means of a conditional verdict? On this point we feel no sort of difficulty. The action of ejectment being, as has been repeatedly ruled, in the nature of a bill in equity, the jury, under the direction of the court, have the same power as a court of chancery. The verdict may be so moulded as to do substantial justice between the parties. Now, what would be the manner and measure of relief in that court? An action of ejectment, we will suppose, is brought in a common law court, on the legal title, to which, as is well settled, the equitable title is no defence. The defendant asks the interposition of a court of equity, to enjoin the plaintiff from proceeding on his legal title. As an illustration, let us take the case in hand. To the action of ejectment by the vendor, the vendee files a bill in chancery, setting out his equitable title, and praying an injunction. The chancellor having possession of the cause by the bill, it is for him to determine the terms and conditions on which he will grant relief; for the extraordinary aid of that court will only be granted upon the complainant's doing equity, as it is an invariable rule, that he who asks equity must do equity. It being then the obvious construction of the contract, that all the debts of the firm are to be paid, and $2000 to the vendor, the chancellor would make a special reference to a master, to ascertain the amount due, and to whom payable; and upon the coming in of the report will decree the respective amounts to be paid to the persons entitled, and upon full satisfaction being made, would order a deed to be made for the premises. And this, in effect, is what has been done here. The jury, who performs the same office as a master in chancery, find for the plaintiff, to be released on the payment of $1025 99 to the vendor, $150 to Charles Barnitz, and $1069 23 to the trustees of the Bank of the United States, on the first of July, 1846, with interest from the date, &c. The verdict is in substance a decree in chancery with all the certainty which is required. The money belonging to the plaintiff is ordered to be paid to him; the debts to the respective creditors; so that the defendant is at no loss to ascertain to whom the money, in discharge of the liens on the land, is to be paid.

Of the form of the finding, the defendants cannot reasonably complain; for the jury have taken care to guard him against the con-

tingency or danger of the money being diverted from its proper and legitimate object.

It is a mistaken supposition, that it is open to the objection, that the verdict embraces strangers to the action; for the creditors, (although not formal parties to the action, as they would be on a bill in chancery,) as well as the plaintiff, have an interest in the land virtually pledged for the payment of debts. Nor need the purchaser be at a loss to know on the trial, who are the unpaid creditors of the firm, as the plaintiff may be compelled to disclose the persons for whose use the suit is brought, and the nature and amount of their claims. So, also, I must remark in answer to another objection, that although now the courts are clothed with chancery powers, it has been decided that the former mode of proceeding is not superceded. The act of Assembly conferring on the courts chancery powers in certain cases, does not oust the jurisdiction of the common law court, exercising equity under the common law form. They are concurrent remedies, and a plaintiff may elect either. Aycinena v. Peries, 6 Watts & Serg. 243.

The defendant further contends, that the vendor is estopped from claiming his title to the land. The purchasers at the sheriff's sale purchased only the title of Moore, which was in equity subject to the payment of the consideration money, expressed in the agreement. The vendor having retained the legal title, the purchasers had constructive, and, if the witnesses are believed, actual notice of the extent and nature of the plaintiff's claim. If, then, the vendor is estopped, it is because he encouraged, either by acts or words, the present owner to purchase the land; for we are of opinion that there was no obligation, either legal or moral, resting on Biddle to give any notice whatever, nor to attend the sheriff's sale for that purpose. It would be a work of supererogation, which the law does not require, to give notice of a fact with which the persons to be affected by it are already acquainted. It is true, that if a man stands by, while his property is selling, knowing his own title, the purchaser being ignorant of it, it would be a fraud not to disclose it; and hence, if he omits, either ignorantly or designedly, to do so, his title is postponed. Or when he aids or encourages another to purchase, it is the same, and for the same reason. Under certain circumstances he may be passive; although under none can he be active in promoting the sale, without being estopped afterwards from asserting his title. The law pertaining to the case is well summed up in the answers to the 11th, 12th, and 13th points, propounded by

the plaintiff's counsel. All that is necessary, in addition to the remarks of the learned judge, is to say, that even admitting the vendor attended the first offer to sell, we see nothing in it to prejudice the plaintiff's rights.

It remains now to notice the remaining bills of exception, two already having been disposed of, by the remarks already made.

1. The plaintiff offered to prove, that at the date of the agreement there was a debt owing by the firm to N. W. Woods, embraced among the debts mentioned in the agreement, and that the debt still remains due and unpaid.

2. That there was a debt owing to Charles Barnitz remaining due and unpaid.

And thirdly, that on the 9th of February, 1844, John Moore and Edward M. Biddle, by his attorney, Frederick Watts, Esq., employed for the purpose, met together and settled the amount of the consideration which was due, under the agreement of the 21st of January, 1839 ; that the statement embraced the debts now offered to be proved ; and that the settlement was reduced to writing, and was made before this suit was brought.

That proof of the debt to Barnitz was properly admitted, inevitably results from the remarks already made. It therefore only remains to examine, whether the court was right in rejecting the first and third offers referred to, contained in the paper marked B ; of the exclusion of this testimony, the plaintiff, who has also taken a writ of error, complains.

It appears in a preceding bill, that the plaintiff offered to prove the amount of the debt of N. W. Woods, by the oath of Woods himself. Now, whether he was competent, depends on what he was called to prove; for if brought to the stand to prove his book of original entries, no objection can be made to the testimony, or the medium of proof. But as he is virtually a party to the ejectment, as has been already shown, he is competent for no other purpose whatever. But the plaintiff afterwards offers generally to prove, that the firm owed the debt, and that it still remains due and unpaid. That it was the design to prove it by disinterested and competent evidence, I take to be granted. What, then, is the objection to the testimony? It is said to be barred by the act of limitation. But in taking upon themselves to exclude the testimony, has not the court undertaken to decide facts which come within the legitimate province of a jury? for although six years may have elapsed since the debt was contracted, it does not necessarily follow that it is barred by the act of limitation ; as it may have been taken out of the operation of the

statute by subsequent acts, or acknowledgments of the debtor. Thus Moore and Biddle acknowledging the debt to be due, takes it out of the act; it therefore remains due and unpaid, and comes directly within the terms of the offer. It is a subsisting debt, unquestionably, as regards him, for there is nothing, either in law or morals, which compels a party to plead the act of limitations, either for himself or for the benefit of a third person. Nay, no honest man will take advantage of the act when he knows the debt to be unpaid.

Nor is there any thing in the circumstances of this case that makes it an exception. The purchasers acquire Moore's right, and no more. This payment of the debt forms part of the purchase money, which the purchasers are bound to pay before they acquire a complete title; and Moore and Biddle both acknowledge the debt to remain unpaid. And what right have the purchasers to object to this? The act of limitations is a personal privilege, of which none but the debtors, as has been ruled, can take advantage. This is an action of ejectment by a vendor, on articles of agreement to recover the land; and when the vendor makes no objection to the execution of the contract, it is not competent for the defendant, who is a terre-tenant, and claiming title, to set up a defence that the vendor has not performed his part of the contract with the vendee. The case is ruled on a ground, (peculiarly applicable here,) that the defendants were strangers to the contract, and had therefore no right to object to the want of performance by the plaintiff. Stub *v.* Lies, 7 Watts, 43. So in Hoffman *v.* Stever, 5 Watts & Serg. 476, it is ruled that infancy, the act of limitations, and the like, can only be taken advantage of by the infant himself, or the person to be affected by it. It is a personal privilege, which they may waive if they see proper.

Next; we think the court erred in ruling out the settlement of the 9th of February, 1844. It is evidence in the suit, because it is an acknowledgment against their interest by the members of the firm. No person can conceive any object which either Biddle or Moore can have to increase the amount of their indebtedness; on the contrary, it is their interest to decrease it as much as possible; for a recovery in this case does not release them from their direct liability to the creditors of the firm. The evidence is not conclusive, but *primâ facie* merely; for it is open to the purchasers to prove, if they can, either mistake or fraud in the settlement.

> The judgment in writ of error Moore *v.* Biddle is affirmed; in writ Biddle *v.* Moore, it is reversed, and a *venire facias de novo* awarded.