L. B. Lindsey *v.* John Thompson.

## J. B. LINDSEY *v.* JOHN THOMPSON.

PRINCIPAL AND STAYOR. *Case dismissed by Principal. Does not discharge Stayor. When.* A judgment against a principal and his stayor, being levied on land of the principal, and returned for condemnation; the case lingered during the war, and was dismissed on the motion of the principal.

*Held,* The stayor was not discharged.

Cases cited: 2 Amer. Lead. Cases, 147 and 123; Story Equity Jups., § 325–6; Bond *v.* Ray, 5 Hum., 494; Thompson *v.* Watson, 10 Yerg., 362; Baker *v.* Briggs, 8 Peck, 122; King *v.* Baldwin, 17 Johns, 334; Wright *v.* Simpson, 5 Vos, 734; Hess, 604; U. S. *v.* Simpson, 3 Parson's Rep., 437; Munsdorf *v.* Singer, 5 Watts, 170.

### FROM DAVIDSON.

Appeal from the Circuit Court. EUGENE CARY, Judge.

R. McP. SMITH for J. B. Lindsey.

GUILD & DODD for Thompson.

SNEED, J., delivered the opinion of the Court.

The plaintiff in error became the stayor upon two judgments rendered by a Justice on the 19th January, 1861, in favor of the defendant in error against W. Barrow. At the expiration of the stay, executions were issued and levied upon the real estate of Barrow, and

NOTE. This case is cited and distinguished in Watson *v.* Read, delivered at Nashville on the 10th April, 1875. The case is hardly consistent with this one, and possibly supersedes it.

REPORTER.

the case brought into the Circuit Court for an order of condemnation. The land levied upon was of value sufficient to discharge the judgments. The case lingered without farther action during the period of the war, until the 3d of June, 1865, when the following entry appears of record in the Circuit Court:

JOHN THOMPSON  
  *v.*  
W. BARROW, *et al.*

The defendants appear by their attorneys, and the plaintiff being called to come into Court and prosecute his suit, failed to do so. Therefore, it is considered by the Court that the defendants go hence and recover of the plaintiff their costs in this behalf expended, for which execution was issued.

On the 24th October, 1866, W. Barrow died, and on the 20th of November following, alias executions were issued against the plaintiff in error, which were superceded and brought before the Circuit Court by this proceeding—Barrow's estate now being insolvent. The theory of the defence, as presented in the petition, seems to have been that this levy upon real estate sufficient to discharge the debts, was in law a satisfaction, and therefore that the petitions as stayor was discharged. This point is, however, surrendered here, and the release of Lindsey is claimed, upon the ground that Thompson, the plaintiff in the executions, after fixing his lien upon the property of the princi-

pal, had by his own *laches* lost the same, and upon the ground the stayor is in law discharged.

It is a general rule that the Court can not consider, in these applications, any ground of relief not set forth in the petition. But in this case no exception was taken below to the form or substance of the petition by motion to dismiss or otherwise, and by an agreed statement of facts and by instructions asked of the Court to be given the jury. The questions now presented were squarely made and determined against the petitioner. And in this state of the case we must take it that the parties have waived all technical exceptions, and are estopped from asserting in this tribunal that the question is not raised by the petition. We feel bound, therefore, to consider all proper amendments to the petition as made, and to determine the question upon its merits, whether the facts stated and agreed, do in law amount to a release of the stayor. The only points of law upon which the Court was asked to instruct the jury were:

1. "Whether the failure of the plaintiff to secure the condemnation of the land levied upon after executions had been returned to the Circuit Court for that purpose, (notwithstanding the fact that the proceedings for that purpose were finally dismissed by the defendant Barrow) would relieve the stayor, Lindsey."

The Court charged the jury that neither of the facts stated would amount to a satisfaction of the original judgment, nor relieve the stayor from his liability. We see no error in these instructions. Upon

the first proposition, nothing is necessary to be said, as it is not insisted upon in this Court.

The rights and remedies, as well as the liabilities of the stayor under our statutes, are assimilated in many respects to those of an ordinary surety against whom judgment has been rendered. Though he has gone forward and voluntarily confessed judgment for the debt of his principal, yet the same equities attach to the relation thus created as between them and the creditors, as belong to the common relation of principal and surety. The remedy is, generally, in a Court of Equity, though we do not undertake to say that the question might not be properly cognizable in a Court of Laws, especially under the liberal provision of our statute law. Code 4,236. Independent, however, of our statute, which provides that in the absence of a demurrer to the jurisdiction any suit of an equitable nature brought in the Circuit Court, may be heard and determined there, it is the common doctrine of the Courts of the country that every defense which would discharge a surety in equity, is recognized as valid by the Courts of law. 2 Am. Lead. Case, 147. We have been referred to no authority in this State or elsewhere, directly applicable to this kind of case, and it must therefore rest upon its own facts. We understand the principle to be, as often recognized by this Court, that "a creditor must, in all transactions with the principal debtor, act with the most perfect good faith toward sureties, and if he do any act injurious to them or inconsistent with their rights, or omits

to do any act which his duty to them requires him to perform, whereby they are injured, they will be discharged from responsibility." Story Eq. Jus. §§ 325, 326. *Bond* v. *Ray*, 5 Hump., 494. *Thompson* v. *Watson*, 10 Yerg., 362. And the adjudged cases upon this subject present many illustrations of this principle. Thus in the case of *Baker* v. *Briggs*, 8 Pick., 122, it is said : " If the creditor abandon any means of obtaining satisfaction from the debtor, whether voluntarily given or obtained by the exercise of legal diligence, the surety will be discharged to the extent of the means so rendered unavailable." The surety said, Platt, J., in *King* v. *Baldwin*, 17 Johns, 384, stood in the same relation to the creditor as the principal debtor, as long as the contract remains unaltered by the act of the creditor with the acknowledged right in the surety at any time after the money becomes due to pay the debt, and proceed for his own indemnification, or to protect himself in Chancery before judgment. "And never understood," said Lord Eldon, in *Wright* v. *Simpson*, 5 Vos., 734, as between the obligee and the surety there was an obligation upon the creditor of active diligence against the principal. It is the business of the surety to see that the principal pays." The Court of Appeals of S. C., in Dep. 604, say : "A surety will be released when an obligor does any act which varies the terms of the original contract ; but a mere forbearance to sue is not such an act." And mere indulgence or inaction is everywhere held no discharge of the surety, if not in contravention of some statute requiring action. Nor

will such indulgence discharge a surety in every case, even where it results in destroying the validity of action on the real estate of the debtor, which if kept alive would have been available in satisfaction of the debt. 2 Am. Lead. Case, 123. Thus in the case of *U. S.* v. *Simpson*, 3 Parsons' Rep., 437, where the land of the principal was discharged from the lien of a judgment obtained against him in consequence of the omission of the creditor to revive it by *sci. fa.*, and was afterwards sold in satisfaction of other claims, the surety was held to continue liable. This opinion was subsequently affirmed, under similar facts, in *Munsderff* v. *Singer*, 5 Watts 170, 2 Am. Lead. Cases, 123. It is needless to multiply citations in illustration of the principle. The last case cited is somewhat analogous to this, and a much stronger case in favor of the surety. We think the law and the justice of this case are already with the defendant in error. The stay of execution expired during the period of the late civil war, and the levy was at once made. The proceedings were brought into the Circuit Court, and for some unexplained reason, referable perhaps to the general paralysis of all judicial business, they lingered upon the docket until the close of the war, when the defendant in error, waiving for the time his right to enforce his demand at a moment of such extraordinary calamity and confusion, forebore to do so, and the record informs us that the defendants "came forward and caused the case to be dismissed. The plaintiff in error was one of those "defendants," and though the facts

agreed advise us that the case was dismissed upon Barrow's motion, yet the plaintiff in error was a party to the cause, and it behooved him to take care of himself, and that was the time and the place to do it. The lien was lost by the affirmative act of his principal, and by his own negligence, rather than any laches or negligence which in such a case the law would impute to the defendant in error.

Affirm the judgment, and let judgment be entered here.