# Smith *against* Webster.

The recital in a patent of a release to the patentee, by a former tenant in common, is not sufficient evidence of the existence of such release, in an action against a purchaser from the patentee, to compel the payment of the purchase money.

A vendee will not be permitted to withhold both the payment of the purchase money and the possession of the land from a vendor, because he happens to be unable to make such title as the vendee is bound to accept.

In an action of ejectment to compel the payment of purchase money upon an executory contract, it is not necessary, in order to entitle the plaintiff to recover, that he should prove a tender of a deed before suit brought. But a previous tender must be proved to entitle the vendor to recover in a personal action for the purchase money.

ERROR to the common pleas of *Beaver* county.

This was an action of *ejectment,* brought by the heirs of Isaac Lee Webster against Thomas Smith and others, to recover a tract of land containing *three hundred* and *fifty* acres. The plaintiffs gave in evidence a warrant, dated the 18th of February 1785, to Joseph Gilfillan, a survey in pursuance of the warrant on the 15th of July 1785, and a patent to John Lee Webster, in whom the warrant title became vested, as appears from the following recital in the patent, to wit, " which said tract of land was surveyed in pursuance of a warrant dated the 18th of February 1785, granted to the said Joseph Gilfillan, whose right became vested in the said John Lee Webster and Amos Loney and Francis Holland, as will appear by a minute of the board of property of the 7th of July 1787. And the said Amos Loney and Francis Holland, by indenture dated the 21st of February 1792, released all their right in said tract, *inter alia,* to the said John Lee Webster." They then produced the will of John Lee Webster dated the 6th of March 1795, with a codicil dated the 28th of May 1795, by which the tract of land in dispute was devised to Isaac Lee Web-

[Smith v. Webster.]

ster, since deceased, of whom the plaintiffs are the brothers and sisters and heirs at law.

The defendants gave in evidence articles of bargain and sale, dated the 17th of October 1795, between Amos Loney and Thomas Smith, as follows :

"Whereas John Lee Webster, in his lifetime, sold the tract in dispute to Thomas Smith for 17 shillings and 6 pence per acre, said land being the joint and undivided property of the said John Lee Webster, Amos Loney and Francis Holland; and whereas the said sale was, for some reason, cancelled and given up by the said Smith, by the consent of the said John Lee Webster to the said Webster, Loney and Holland, and whereas the said John Lee Webster and Francis Holland are, since the making of said agreement and cancelling thereof, dead, and the said land, or a part thereof, disputed and claimed by older claims and grants : now this witnesseth, that the said Thomas Smith agrees with the above mentioned Amos Loney, the survivor of the said Webster, Loney and Holland, that he, the said Smith, will superintend the suit now depending for the land, and use his reasonable endeavours in procuring evidence and giving such instructions as may be in his power, and for the advantage of said Loney's interest in conducting said suit ; and the said Loney agrees on his part, for himself and his heirs, that said Smith shall have all the land clear of surveys or prior rights, at the price of 17 shillings and 6 pence per acre, which said land the said Amos Loney agrees to convey by a deed of conveyance to the said Smith, his heirs and assigns, upon the said Smith's paying the purchase money, the one half in one year from the termination of the suit now pending, and the other half in two years.   In consideration of which the parties hereto bind themselves, their heirs and assigns, to each other, in the penal sum of 1000 pounds."

The defendants also gave in evidence a contract or bond dated the 20th of October 1801, executed by John Skinner Webster as the attorney in fact of Isaac Lee Webster, then in Europe, to Thomas Smith, in the sum of 631 pounds 10 shillings, Maryland currency, and conditioned that if John Skinner Webster, his heirs, &c., or Isaac Lee Webster or his representatives, shall convey by deed in fee simple the tract in dispute to Thomas Smith, upon the said Smith, his heirs, &c. discharging a bond of the same date given by Smith for 330 pounds 15 shillings, in consideration of the purchase of the land, then to be void, &c.   A further condition was added, that if any part of the land were claimed and held by right prior to the patent, Smith should pay at the rate of 17 shillings and 6 pence per acre for what he should hold.

It was contended by the defendants that this contract or bond was not complied with by the plaintiff's tendering a deed executed by John Skinner Webster, who was only authorised by the will of John Lee Webster to execute deeds of conveyance during the minority of Isaac Lee Webster.

[Smith v. Webster.]

The following errors were assigned.

1. The court erred in stating to the jury that the recitals of the releases mentioned in the patent from Amos Loney and Francis Holland to John Lee Webster, were sufficient evidence of the existence of such releases against Thomas Smith, who claimed under Loney by a contract of purchase made subsequently to the issuing of the patent.

2. The court below erred in charging the jury that the articles of bargain and sale made between Amos Loney and Thomas Smith, vested no title either legal or equitable in Thomas Smith.

3. The court below erred in charging the jury, that if they believed the testimony of Mr Potts, that in 1793 Thomas Smith declared he had purchased the tract of land from *John Lee Webster*, the writing signed by John S. Webster would not cancel the agreement with John Lee Webster, but might be considered as fixing and settling the terms of that agreement, referred to by the witnesses, and the title tendered would be good, and entitle the plaintiff to a verdict.

4. The court below erred in charging the jury, that the plaintiffs were not bound to tender a deed before the institution of the ejectment.

*Shannon*, for plaintiffs in error.

This action was brought to enforce the payment of the purchase money alleged to be due from Thomas Smith. The patent was offered in evidence to prove title in the plaintiffs. To its admission we objected, because the releases of Loney and Holland recited there could not affect a subsequent purchaser. But the court decided that those recitals were good against all persons claiming subsequently to the date of the patent. This decision was predicated on Penrose *v.* Griffith, 4 *Binn.* 231. But the court, in the construction of that case, erred. Smith was not bound by the recitals; nor did these recitals exempt the plaintiffs from the necessity of producing the transfer from Loney and Holland to John Lee Webster. This they failed to do.

By the will of John Lee Webster, Isaac Skinner Webster was appointed executor, with power to make titles. He executed a deed after the suit was instituted, and tendered it at the trial to Thomas Smith : but in executing this deed he exceeded his authority. The will of the testator provided, that he should not make conveyances except in conformity with authenticated written agreements. Here there was nothing but parol proof of the purchase in 1793 by Smith from the intestate. The deed tendered at the trial, therefore, vested no title in Smith.

But if the deed were good, it should have been tendered before the institution of the ejectment. This was just as necessary as the performance by the plaintiff of a covenant in an article of agreement on which an action is brought. Moody *v.* Vandyke, 4 *Binn.* 33, 43 ; Southerland *v.* Purry, 2 *Penns. Rep.* 145.

[Smith v. Webster.]

*H. M. Watts* and *Fetterman,* for defendants in error.

The tract of land in controversy was, on the the 25th of February 1795, granted by patent from the commonwealth to John Lee Webster, the grandfather of the plaintiffs.    This patent recited the releases of Francis Holland and Amos Loney to the patentee, of the interests they appear to have held in common with him in the warrant.    The land was held by the ancestor of the defendant, Thomas Smith, under an executory agreement with the patentee, who devised the same to the father of the plaintiffs below.

As it was unequivocally proved that the defendants held under and not adversely to the plaintiffs, the protection they sought under the statute of limitations vanished before them.    The only difficulty the plaintiffs had to encounter on the trial was, as to the recitals in the patent being evidence against the defendants.    They claimed title from the patentee, and not by a prior grant from the commonwealth ; for although they pretended to hold under Amos Loney, whose agreement was exhibited, yet the articles themselves referred to the former agreement between them and John Lee Webster, and was so recognised by them.    The principle, then, in Penrose v. Griffith, 4 *Binn.* 231, sustains the opinion of the lower court.

The action of ejectment being brought to recover the land, or to compel the payment of the purchase money, it would be inequitable to permit the defendants to retain both the land and the money. There is no rule of decision which renders it necessary for a vendor to tender a deed before the institution of his ejectment, in order to maintain the same.    Equity enforces the delivery of the possession on payment of the money.    Stewart *v.* Butler et al., 2 *Serg. & Rawle* 382 ; Marlin *v.* Willink et al., 7 *Serg. & Rawle* 298 ; Michell's Lessee *v.* De Roche, 1 *Yeates* 12 ; Case of Spear's Road, 4 *Binn.* 177 ; Lessee of Minsker et al. *v.* Robinson, 2 *Yeates* 344 ; Moody *v.* Vandyke, 4 *Binn.* 31.

*Forward,* in reply.    In the court below this case was considered a contest between a vendor and vendee.    The stipulations in the contract of sale were dependent.    The performance must be concurrent. Before bringing suit this performance must take place.    The vendor must tender a good title or he fails to recover.    As to the recitals in the patent, the vendee could not be estopped by them from disputing the vendor's title.    Where one claims under a sale executed, his possession is adverse, and from the time the adverse possession commences the statute of limitations runs.    Suppose Loney were claiming the land, the recital in the patent would be no evidence against him.    How then could he be resisted, as there would be no evidence that his title was extinguished ?

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned in this case is, that the court erred in directing the jury that the recitals contained in the

patent from the commonwealth, of the releases from Amos Loney and Francis Holland were sufficient evidence of their existence. Unquestionably these recitals would have been evidence against the commonwealth, as also all persons deriving title from her subsequently to the date of the patent; and the court below seem to have viewed the matter in this light, for they refer to the case of Penrose *v.* Griffith, 4 *Binn.* 231, to support their direction to the jury in this behalf. But here the plaintiff in error is not claiming the land in question under a title from the commonwealth posterior in date to that under which the defendants in error, who were the plaintiffs in the court below, claim to recover the possession of it. The plaintiff in error claims to hold the possession of it, first, as the vendee of the father of the defendants in error, under whom they claim as heirs at law; and in the next place, as the vendee of Amos Loney, who, according to the muniments of title given in evidence by the defendants in error themselves, was previously, at least to the granting of the patent of John Lee Webster, from whom the father of the defendants in error derived his claim to the land, a joint owner or tenant of it with John Lee Webster and Francis Holland.

Although it may be doubtful as to the purpose for which this action was originally instituted, it is now distinctly admitted that it is only persisted in to enforce the payment of the purchase money from the plaintiff in error, who was the defendant in the court below. This being admitted to be the object of the suit, it is clear that the plaintiff ought not to be compelled to pay it, unless the defendants in error can show that it is in their power to give him an indefeasible title in fee simple for the land. But as it appeared on the trial that Amos Loney and Francis Holland were, prior to the granting of the patent, joint owners of the land with John Lee Webster, it was incumbent on the defendants in error to show that Loney and Holland had parted with their interest in the land, and that it had become vested in some way or other in the defendants in error; otherwise it was perfectly manifest that they could not make a title for it to the plaintiff in error. It is not pretended that even the shadow of evidence was offered or given for this purpose, unless the recitals in the patent be considered evidence of it. Now although these recitals may be deemed good evidence against the commonwealth, who has admitted their truth, yet I am at a loss to conceive upon what principle or rule of evidence they can be considered binding in the slightest degree upon Loney and Holland; because, unless they would be evidence against them, for aught that appears, these persons still retain their respective rights to the land. They are not parties to the patent, nor does it appear that they had any knowledge of its being granted; nor was it shown in any way whatever that they had at any time given their assent to the truth of the recitals contained in it, or that it should be made to John Lee Webster alone. There is then not the least colour for holding these recitals to be evidence against them. And regarding the defendants

[Smith v. Webster.]

in error as the vendors, and the plaintiff in error as their vendee of the land, is there not just as little ground for saying that the latter ought to be concluded by these recitals; or that as to him they are any evidence whatever of the capacity of the defendants in error to make a title for the land. As vendors demanding payment of the purchase money from the plaintiff in error, they were bound to show that they had a good title to the land, and unless the evidence given of their title be such as would be good against all those who appear previously to have had an interest in it, it is obvious that their evidence of title must be considered defective. It is a misapprehension to think that the plaintiff in error, by entering into a contract for the purchase of the land, thereby admitted that the vendor or vendors had a good title to it, and that they were able to make him such for it. He is only to be considered as binding himself to pay the purchase money agreed on, in consideration whereof he is to receive a title for the land that shall be shown by the defendants in error to be indisputably good. This action, then, being admitted by the defendants in error to be carried on for the purpose of compelling payment of the purchase money by the plaintiff in error, they ought to have shown that they had it in their power to make an indefeasible title in fee for the land; or otherwise have shown that they were unable to do so, and to have left it to the plaintiff in error to determine whether he would accept of such title as they were able to make, or otherwise surrender the possession of the land to them, so far as he had received it from those under whom they claimed : for there would be no propriety or justice in permitting the vendee to withhold both the payment of the purchase money and the possession of the land from the vendor, where he received the latter from the vendor under the contract for the sale, because the vendor happens to be unable to make such title for the land as the vendee, according to the terms of the contract, is bound to accept.

The second error is, that the court were wrong in instructing the jury that the articles of agreement made between Thomas Smith and Amos Loney vested no title, either legal or equitable, in Smith. The title papers produced and given in evidence by the plaintiffs below, showed that Loney had an interest in the land; that he was the joint owner of an undivided third part of it with John Lee Webster and Francis Holland ; and it was not shown that he had parted with this interest in any other way than by his agreement with the plaintiff in error. By his agreement with the plaintiff in error, which is dated the 17th of October 1795, he seems to have claimed the whole of the land by right of survivorship, and agreed to sell and convey it to the plaintiff in error, upon his paying 17 shillings 6 pence per acre for it in the manner therein mentioned. Under this agreement, the plaintiff in error being in possession of the land, became entitled to hold it so far as Loney's interest in the land extended, until Loney himself should either seek to have the purchase money paid, or otherwise claim a surrender of the posses-

sion of his interest in the land. Under this view of this part of the case, it appears to me that there was error in the charge of the court to the jury in declaring that the articles of agreement between Loney and the plaintiff in error vested no interest or claim to the possession of the land in the latter. Upon the evidence given by the plaintiffs below on the trial, it is evident that they could not have claimed to turn Loney out of the possession of the land had he been in it and been the defendant. But the plaintiff in error, by his agreement with Loney, stood in his shoes, and consequently had the same right to resist the recovery of the defendants in error, that Loney himself would have had had he been the defendant in the court below.

The third exception is, that the court erred in charging the jury that "if they believed the testimony of Mr Potts, that in 1793 Thomas Smith declared he had purchased the tract of land from John Lee Webster, the writing signed by John Skinner Webster would not cancel the agreement with John Lee Webster, but may be considered as fixing and settling the terms of that agreement referred to by the witnesses, and the title tendered would be good, and entitle the plaintiffs to your verdict." If it had been shown on the trial of the cause that there was a subsisting contract *in writing* at the death of John Lee Webster, between him and the plaintiff in error for the sale of the land, John Skinner Webster, as executor of the last will and testament of John Lee Webster, had full power to have carried such contract into execution, by securing the purchase money and making a deed of conveyance to the plaintiff in error for the land. And in case no such contract existed, he was authorized by the will during the minority of Isaac Lee Webster, the father of the defendants in error, to whom the land or the proceeds of it were devised, to sell and convey it. But without a contract made in writing by John Lee Webster, in his lifetime, for the sale of it to the plaintiff in error, John S. Webster, as his executor, had no authority given him by the will to carry it into effect. And after Isaac Lee Webster attained full age, the authority of John S. Webster to sell or dispose of the land under the will ceased. But from the face of the agreement itself, which John S. Webster made with the plaintiff in error, it is very evident that he did not consider himself invested with sufficient powers under the will to make such a contract, because he expressly professes to act in making it under a letter of attorney from Isaac Lee Webster, who, we must presume, had in the mean time attained full age. Thus distinctly excluding all idea of any former contract for the sale of the land by the testator, as well as that of carrying any such into effect. Whether John S. Webster had any letter of attorney from Isaac Lee Webster authorising him to make such a contract, did not appear on the trial of the cause. But if he had, it appears to me that it was clearly a relinquishment of all former contracts made by the testator with the plaintiff in error. The defendants in error then, if they meant to

carry into execution the contract made with John S. Webster, their father being dead, and the authority which John S. Webster had under the letter of attorney from him thereby revoked, ought to have joined in executing a deed of conveyance themselves to the plaintiff in error for the land, showing likewise that they were invested with the title to it, instead of producing a deed of conveyance, as they did, from John S. Webster, purporting to be executed by him, under an authority contained in the will of John Lee Webster to do so, in order to carry into effect an agreement made by the testator in his lifetime with the plaintiff in error for the sale of the land. It is not alleged in this deed that the agreement made by the testator with the plaintiff in error was in writing; nor was any evidence given to show that there was any such agreement existing in fact, to authorize John S. Webster to make the deed. Neither is the existence of such an agreement reconcilable with the previous conduct of John S. Webster, in making the agreement with the plaintiff in error when he professed to have and to act under a letter of attorney from Isaac Lee Webster. The deed of conveyance executed by him under all these circumstances must be regarded as a nullity, and of no efficacy whatever: and the court below were wrong in the view which they took of this matter and submitted to the jury, by connecting it and the contract which John S. Webster made with the plaintiff in error at all with a contract of which some of the witnesses spoke, and said to be made with the testator in his lifetime, as constituent parts of the same arrangement. For, supposing an agreement between John Lee Webster and the plaintiff in error for the sale of the land to have existed, the agreement afterwards made by John S. Webster with the plaintiff in error may well be considered a relinquishment of it, as it purports to be made by John S. Webster in an entirely different character from that of the representative of John Lee Webster, and for and on behalf of a different person; and at a time too when the land was in dispute, and an action of ejectment was pending against the plaintiff in error, to recover it from him under a title altogether adverse to that under which the defendants in error claim.

The fourth error is, that the court below charged the jury that the plaintiffs below were not bound to tender a deed of conveyance before the institution of their ejectment. If the plaintiffs below had the legal title in them to the land, that was clearly sufficient at law to enable them to maintain the action of ejectment; and it was only on principles of equity that the defendant there could claim to defend against the plaintiffs' recovery of the possession of the land. Then what did equity require the defendant below to do in order that he might be protected in the possession of it? Certainly to pay the purchase money: and nothing short of that, as it appears to me, could save him. By the terms of his contract, he had no right to demand a deed of conveyance until he paid the purchase money: and not having offered to pay it, he was neither in law, nor yet in equity,

[Smith v. Webster.]

entitled to demand a deed of conveyance. And not being entitled himself to demand it, equity could not interpose to keep him in possession of the land. A vendee under an executory contract for the purchase of land, who has obtained the possession of it under his agreement, can only defend himself in that possession in Pennsylvania, where we have no court of chancery, upon such ground as would entitle him to a decree of injunction by a court of equity against his vendor, who was proceeding by action of ejectment at law to turn him out of the possession. We must be careful not to confound the vendor's proceeding by action of ejectment for the purpose of enforcing the payment of the purchase money, with his proceeding in a mere personal action founded upon a breach of the contract of sale itself. The action of ejectment in such case is not founded upon the contract, but rather upon the legal title to the land still being in the plaintiff, who is not bound by his contract to part with it until he shall have received from the defendant the purchase money. And the defendant having failed to pay it according to the terms of his contract, has no claim even in equity to hold the possession. But the plaintiff, if he means to proceed by a personal action for a breach of the contract, as by covenant or *assumpsit*, (and the payment of the purchase money and the making of the deed are, by the terms of the contract, to be considered simultaneous acts) must, before bringing his action, execute and tender a deed of conveyance to the defendant.

Judgment reversed, and a *venire de novo* awarded.