## Jackson *versus* McGinness.

1. In an ejectment by a vendor against a *purchaser from the vendee*, to enforce the payment of purchase money due by the vendee, where the vendee has not paid to his vendor any part of the purchase money or made valuable improvements, the defendant cannot set up the weakness of the title of the first vendor, in defence of his own possession. He must either pay the purchase money or relinquish the possession, unless fraud has been practised upon him. Nor can he set up an outstanding title in another, or an adverse title in himself; and his payment of part of his purchase money to the vendee will not affect the claim of the vendor, unless he was connected with the vendee in the second sale.

2. Where a deputy sheriff purchases property at the sheriff's sale, and there is no fraud, the owner of the property may disaffirm the sale, but must repay the purchase money paid.

ERROR to the Common Pleas of *Fayette county.*

This was an ejectment by Hiram Jackson *vs.* Johnston McGinness. The land in dispute belonged to Acre Worley, deceased; who, by will dated the 29th April, 1826, devised said land *to his wife, Lydia Worley*, during her life, and, at her death, to his two half brothers, Samuel and Joseph Worley. In 1834, after the decease of Acre Worley, the Bank of Brownsville obtained judgment against *Lydia and Samuel Worley*, on which *fi. fa.* issued, the property in dispute levied on and condemned, *ven. exp.* issued, and sold to Hiram Jackson, plaintiff, March 6th, 1834. No deed from the sheriff to Jackson was in evidence.

Some time after Jackson had purchased at sheriff's sale, he sold the property to Gideon John, who took possession, but paid no part of the purchase money. Gideon John was sheriff of Fayette county at the time of the sheriff's sale. The sale by Hiram Jackson to Gideon John was by parol; but when made, or for what price, did not appear in evidence.

In 1839, Gideon John sold to *Johnston McGinness*, the defendant, who went into possession, *paid a portion* in hand, and gave his notes for the balance of purchase money. One of these notes was assigned by Gideon John to Jesse Antram; on this note Jesse Antram brought suit against Johnston McGinness and obtained judgment. On this judgment, the property was sold by the sheriff, and purchased by Jesse Antram for $270; deed dated 13th Dec., 1842. McGinness showed that he was in possession *as the tenant of Antram.*

One other note of $140, given by McGinness to John, was paid; *the balance he refused to pay, on account of defect of title.*

Hiram Jackson, the plaintiff, having received no part of the purchase money from John, brought this ejectment to enforce the payment of the same.

[Jackson *v.* McGinness.]

Nearly two years *after* the bringing this ejectment, Jesse Antram procured a deed from Lydia Worley for her interest in this land.

On the trial, the defendant offered to show that Hiram Jackson, the plaintiff, who was the purchaser at sheriff's sale, was *deputy sheriff of Fayette county at the time of said sale*, for the purpose of showing that the sale was voidable. To this testimony, the plaintiff objected, on the ground that, as Gideon John had never paid any portion of the purchase money, nor he nor defendant expended any thing for improvement, neither he nor his vendee, McGinness, the defendant, could impeach the title of the original vendor, the plaintiff. If the title is defective, and they refuse to pay, they must give up possession. A vendee cannot retain both the money and the land.

The court, however, overruled the objection and admitted the testimony, which is the ground of exception referred to in the *first* error assigned.

Defendant then offered the deed from Lydia Worley the tenant for life, to Jesse Antram, dated 1st January, 1849, for the purpose of showing that Mrs. Worley *elected to avoid the sale.* This objected to by plaintiff, on the ground that, " a vendee in possession by articles of agreement, against whom an ejectment is brought to compel the payment of purchase money, shall not be permitted to set up an outstanding title in a third person to defeat a recovery by the vendor :" 4 *Watts* 146. Neither shall the vendee, nor any one holding under him, (as in this case,) be permitted to set up title in himself adverse to the title of his vendor : 7 *W. & Ser.* 138. A vendee is "bound to restore his vendor to the situation in which he found him." The court, however, overruled the objection ; and the admission of this testimony is the *second* error assigned.

GILMORE, J., after bringing *to* the attention of the jury the material facts, said :—It is for you to say, from the evidence, whether Hiram Jackson was the deputy of Gideon John, the sheriff, at the time he made the purchase on the 6th March, 1834. If he was, the law, we apprehend, is plain, and the sale could be considered and treated as a nullity. It is true, it was competent for the defendants, or either of them in that judgment, to sanction the sale ; but it would seem that Mrs. Worley *has elected to avoid it.* The rule is this, that where a trustee becomes the purchaser of the trust estate, *the cestui que trust* may set aside the purchase—and this principle extends not only to a trustee properly so called, but to judicial officers, and all other persons who in any respect have a concern in the disposition and sale of the property of others ; and it is immaterial whether the sale is public or private, judicial or otherwise, or for a low price : 2 *Whar.* 53 ; 2 *Johns. Cha.* 212 ; *Story on Agency* 211.

'[Jackson *v*. McGinness.]

The plaintiff contends that Johnston McGinness, the defendant, being the vendee here of John, is bound to restore possession. The defendant here bargained for a title. Now, if the jury are satisfied that Hiram Jackson was the deputy sheriff at the time of the Sheriff's sale, and that Mrs. Worley has determined to avoid that sale, then it is evident that the defendant can never make a title for the premises, and we see no reason why the defendant should be turned out, *at least not until he has been indemnified;* and this, we think, is in conformity to the case of 6 *Watts* 229; and 9 *W. & Ser.* 82.

Verdict was rendered for the defendant.

It was assigned for error:

1st. The court erred in admitting the testimony referred to in first bill of exceptions by plaintiff.

2d. The court erred in admitting the testimony referred to in second bill of exceptions.

3d. The court erred in charging the jury that, "if plaintiff was deputy sheriff at the time he made the purchase, the sale could be treated as a nullity, and avoided by the act of Mrs. Worley."

4th. The court erred under the facts of this case, by charging the jury that, "as the defendant bargained for a title, he should not be turned out unless he was indemnified."

*A. Patterson*, for plaintiff in error.—That the purchaser must pay or give up the possession, *there being no actual fraud proved*. As to the first exception, he referred to 2 *Watts* 485; 4 *id.* 146; 2 *Barr* 34. As to second error, 2 *Bin.* 468; 6 *id.* 62; 1 *Barbour* 114; 4 *Johnson* 210.

*J. Veech*, for defendant in error.—That the sale to the deputy sheriff, Jackson, was voidable, and that Mrs. Worley could avoid it: 6 *Ves.* 617, 625; 10 *id.* 381; 7 *Watts* 387; 9 *Barr* 284.

The opinion of the court was delivered by

Bell, J.—Under the proof as it stands, McGinness, as representing Antram, must be taken as in possession primarily, under the sale made by Jackson to John. In relation to the former, he stands in the shoes of the latter, without pretence of payment of purchase money or valuable improvements made; for it is almost needless to observe that the payments made by McGinness to John, cannot be set up as affecting any right residing in the plaintiff, Jackson. Considered as between him and the defendant, we are then presented with the case of a vendor and vendee, the latter being in possession without payment of purchase money, and the former seeking to recover it or the possession. Now nothing is more firmly settled, than that such a vendee cannot retain both

[Jackson v. McGinness.]

money and land. He must pay the one or yield the possession of the other; and in an action to enforce this duty, he can only defend on such ground as would entitle him, in equity, to an injunction against his vendor: Smith *v.* Webster, 2 *Watts* 485–6. Where, as here, there is neither purchase money paid nor improvements made, he cannot aver the weakness of the title he has purchased, as a defence. If he likes it not, he must relinquish it, unless he can show some fraud has been practised upon him. Neither can he be permitted to set up an outstanding title in a third person, or an adverse title in himself, to defeat a recovery by the vendor: Congregation *v.* Miles, 4 *Watts* 146; for, as was observed in Treaster *v.* Fleisher, 7 *W. & Ser.* 138, "for the same reason that a tenant may not contest the title of his landlord from whom he obtained possession, a vendee is bound to restore his vendor to the situation in which he found him." This is a rule of policy not to be lightly broken in upon. Good faith, truth, honesty, and the peace and order of the community, require that he who has acquired possession under a contract not tainted with fraud, should not use that possession to the injury of him from whom he received it. But the defendant attempts to sustain his defence on both of these prohibited grounds. It was said below, he bargained for a good title. It does not appear what were the terms of the contract in this particular, between the plaintiff and John; and this is the only contract we have to do with at present. It may be that Jackson sold to John just the title he had, free of any stipulation as to its quality. But if it be conceded the agreement was for a good title, which Jackson cannot make, what is that to the defendant? He has not paid Jackson for a perfect title, and need not, unless he chooses. If he has been so improvident as to pay John for what is worthless, he cannot visit that upon Jackson without showing the latter was, in some way, connected with John in the transaction. It is unfortunate if he has thus thrown away his money; but under the facts as they now stand, the law can afford him no relief.

Then as to the title acquired from Mrs. Worley. If Jackson was deputy sheriff at the time of his purchase, and it was untainted by actual fraud, (of which I perceive no evidence,) the most that Mrs. Worley could do, would be to avoid the sale by reimbursing Jackson his outlay. The governing principle in such cases was indicated in Beeson *v.* Beeson, 9 *Barr* 279, where it was ruled that a purchase by a trustee or officer at his own sale is not void, but voidable only, the legal title passing to the purchaser until the sale be set aside by a competent tribunal, which will only be done on the terms of reimbursing the purchasing trustee. After doing or offering to do this, Mrs. Worley, by ejectment, might disaffirm the sale to the extent of her interest in the land. But for the reason already given, the defendant, as tenant of Antram, cannot set up

[Jackson *v.* McGinness.]

her conveyance, either as vesting an adverse title, or as evidence of disaffirmance of Jackson's purchase, to defeat this action. The attempt is a fraud upon his own possession, which I have already said sound policy will not sanction. He must first turn out by yielding the subject of this contest, before he can be suffered to impeach the title under which he originally entered, for possession and disloyalty are repugnant. After this, he may take ground hostile to the plaintiff, by availing himself of the conveyance from Mrs. Worley, if it shall be found of value.

The learned judge before whom the cause was tried, seems to have been led to give his sanction to the defence, by his understanding of the cases of Richardson *v.* Kuhn, 6 *Watts* 299, and Creigh *v.* Shatto, 9 *W. & Ser.* 82. But in both those instances, the attempt was to force on the vendee, who had paid part of the purchase money, a worthless, or at least a doubtful title, under the penalty of forfeiture of what had been paid, and the value of improvements made. In the first of them, the court said, speaking of the vendors and vendee, "they may not call on him to turn out, without rescinding the bargain, restoring purchase money paid, and tendering compensation for intermediate improvements." In the other, the action was to recover *balance* of purchase money, as is evident from the opinion of the court, the case being treated as a bill in equity for a specific performance, where the vendee had acquired a beneficial interest. These features, which essentially differ these cases from the present, were overlooked in the hurry of a trial, which sometimes precludes the opportunity for critical examination. It has been urged upon us here, that the plaintiff, having failed to show the price John was to pay him for the land, cannot recover in an action to enforce the payment of it. But the cause was not put upon that foot at the trial; had it been, satisfactory proof might have been given on this head, for aught we know. It is evident the jury, under the charge given them, must have decided it upon another ground. It is, however, proper to say, that it is incumbent on the plaintiff to give some evidence of the sum John agreed to pay; for if Jackson presented John with the land without price, or if the former purchased for the latter, he cannot recover without at least refunding the purchase money paid by McGinness and Antram.

Judgment reversed and a *venire de novo* awarded.