## Brock *versus* Savage.

*Patents issued by land office to person claiming under warrantee enure to the benefit of him who has paid the purchase-money for sale of the title to the warrant.*

1. Where, under a contract of bargain and sale, a title to land-warrants issued by the Commonwealth has been bought, and the vendee, in pursuance of the terms of the contract, has paid the purchase-money and office fees into the land office, and the surveying expenses as a portion of the purchase-money, the patents taken out by a party claiming under him to whom the warrants were issued, will enure to the benefit of him who paid the purchase-money, although more than twenty-one years have elapsed since the date of the patent, especially where he and those under whom he claimed had in the mean time exercised acts of ownership over it, and the vendors had omitted to do so for over forty years.

2. The presumption of law in such case is, that after the lapse of twenty years from the date of the patent, or the return of the survey, the whole purchase-money has been paid, and after the further lapse of thirty years, that a deed of conveyance in confirmation of the contract has been given, which presumption becomes absolute in the absence of rebutting evidence.

ERROR to the Common Pleas of *Huntingdon county*.

This was an action of ejectment, brought by John Penn Brock against John Savage, for four hundred acres of land in Union township, Huntingdon county, in which, under the ruling of the court below, there was a verdict and judgment in favour of defendant.

There were nineteen specifications of error presented to this court, of which seven were to the admission or rejection of testimony.

All the material facts of the case, and the points made on the argument, will be found in the opinion of this court, which was delivered, January 14th 1864, by

AGNEW, J.—We must pay attention to the facts in order to understand this case accurately. The plaintiff claims title from Charles Young, to whom sixty-eight patents were granted in December 1796, for as many tracts, including those in controversy. The patents recite deeds-poll from the warrantees to Chambers & McNutt, and from Chambers & McNutt to Young.

The defendant derives title from James Wilson, who, by an agreement dated the 29th of March 1794, contracted to purchase

[Brock *v.* Savage.]

from Chambers & McNutt ninety-six tracts of land, including the sixty-eight sold afterwards to Charles Young. The warrants for these ninety-six tracts had been issued from the 15th to the 24th of March 1794, and therefore prior to the date of the contract of Wilson. This agreement between Chambers & McNutt and Wilson recites that the vendors had entered in the land office applications for these ninety-six tracts, and that warrants had issued, or were about to be. Thus, by the contract itself, the title to the warrants was admitted by Wilson to be in Chambers & McNutt, and he bargained for their purchase. They bound themselves to obtain deeds-poll from the warrantees to Wilson, procure surveys and returns to the land office, and have them patented to Wilson. Wilson then covenanted to pay the purchase-money to the state, and office fees, twenty shillings per tract, to Chambers & McNutt, for expenses of surveys, the surveying and patenting fees when the returns were made and ready for patenting, and after patents had issued to him, the sum of nine pence per acre to Chambers & McNutt. The defendant gave this agreement in evidence as the foundation of his title.

Thus it becomes clear this is not a case of a mere resulting trust between the holders of a legal title and one who has paid the purchase-money, but it rests in a contract of bargain and sale of the title to the warrants, and the payments of the purchase-money into the land office, on the footing of, and as a part performance of the contract. Hence the case does not fall within the decision in Strimpfler *v.* Roberts, 6 Harris 283, which is, that a party claiming a mere resulting trust in equity by payment of the consideration, who has not asserted his equity by taking possession, or bringing his action against the holder of the legal title for twenty-one years or more, must be presumed to have lost his equity. It must be observed that there was no privity whatever in that case between Benson, the alleged *cestui que trust*, and the holder of the legal title; and Black, C. J., remarked: "'This, then, is the case of an ejectment, brought as a substitute for a bill in equity to declare the holders of the legal title trustees of Benson, and to compel execution of the trust." " Courts of equity will not listen to claims so old that they would be barred at law by the Statute of Limitations."

But our case is clearly one between vendor and vendee, and the question is, has the contract been acted upon by the parties, and those claiming under them, and to what extent? Have Wilson or his successors done what would entitle him or them to a conveyance; that is, to the patents: or has he performed in part only, and is he or those under him liable to surrender possession, or pay a balance of purchase-money?

Wilson paid the purchase-money and office fees into the land office, and the twenty shillings per tract for surveying expenses,

and the further sum of twenty pounds. He had no more to do until Chambers & McNutt had procured deeds-poll, surveyed and returned the tracts into the land office, and made them ready for patenting to Wilson, of which he would be entitled to notice from them, in order to know when to pay the fees of surveys and patents. All that remained to be done by him, before obtaining his conveyance, had been done; for the nine pence per acre were not payable until after patents had issued to Wilson.

So far Wilson appears to have been in no default, and therefore entitled to stand upon his contract, and, if put into possession or treated as in, was entitled to remain there. But what was done on the other side? We know no more than the mere fact that the patents, for the sixty-eight tracts, were made to Charles Young, including those in controversy. What Charles Young had to do with the land we know not, except that his patents recited deeds-poll from the warrantees to Chambers & McNutt, and from them to him.

Thus stood the case until 1853, when the heir at law of Charles Young conveyed these lands to the plantiff for the nominal consideration of one dollar ; nearly sixty years elapsing without any assertion of title : taking no possession, paying no taxes, in fact doing nothing, except the execution of a release under circumstances which amounted to an admission of the title being in Wilson's assignee.

On the other hand, the whole current of the evidence shows that the control and management of the lands were in Wilson's assignee, with the possession, so far as taken under the contract, and the right to enter whenever and wherever they chose, the lands being wild. By indenture dated August 20th 1796, Wilson conveyed to Benjamin R. Morgan a large body of lands, including all those in controversy. Whether this was a mortgage or conditional deed, is of no consequence, for this question concerned only the parties to it, and not Charles Young; but its value is as an act of control by Wilson, and the authority it contained to enable Morgan to connect himself with Wilson's contract of purchase, to enter, pay taxes, convey, &c., and the parties to it have ever since treated it as a conveyance. Under this deed Morgan asserted frequent acts of ownership over these lands, paying taxes, making sales, and making surveys. One was a survey in 1833 of twelve thousand acres, including the lands in controversy, and upon which he conveyed to John Savage, the ancestor of the defendant, in 1834. John Savage entered into actual possession of three of the tracts, and made large and valuable improvements.

Thus the defendant stands in the attitude of a defendant in possession, for though actual possession of all the tracts was not taken by Wilson and his assignees, they were treated by the

[Brock *v.* Savage.]

vendors, Chambers & McNutt, and Young, the patentee, and his heirs, as vendees in possession, the lands being wild, by suffering them to manage, control, sell, and enter where they pleased, the vendors having relinquished all pretence of possession by non-claim for nearly sixty years. To this we must add, conduct wholly inconsistent with any claim of title or possession so early as 1809, when parties claiming a portion of the lands, by a written submission with Benjamin R. Morgan, referred the very question of title to award of referees, who decided in favour of Wilson's title, and in pursuance of which Charles Young (the second), or heir of Charles Young the patentee, released all his nominal title in twenty-five of the tracts to Morgan, without any reservation or claim of title to the residue, his release on the contrary reciting Wilson's purchase of the whole number of tracts. This release was in 1813, leaving again a lapse of forty years, until his heir at law executed the deed to the plaintiff for one dollar.

What is the effect of all this conduct? Clearly it places the claimants of Wilson's title in the attitude of vendees under an executed contract, with no act done on part of the vendors by way of assertion of title, or in avoidance of the contract, or of claim to further performance, for over forty years, indeed, as to all the land, except the five tracts decided by the reference, for nearly sixty years.

Under this statement it becomes clear that the defendant is entitled to every presumption which such facts raise, both in law and equity. The first presumption is a presumption of law, which is, that after a lapse of twenty years from the date of the patents at least, perhaps after the date of the return of the surveys and acceptance in the land office, the whole purchase-money has been paid; and next, by the further lapse of over thirty years, that a deed of conveyance had been delivered in confirmation of the contract. These it is true were but *primâ facie* presumptions, but when no evidence to rebut had been given by the plaintiff they became absolute, entitling the defendant to rest upon them. This legal presumption is moreover strengthened by the release of Charles Young the second in 1813 for twenty-five of the tracts, for this took place before the time had elapsed creating the presumption of payment, and the presumption becomes stronger, therefore, that full payment was afterwards made and the residue conveyed by a deed which was lost, forty years having since elapsed.

Besides these legal presumptions (for the presumptions arising under rules of evidence are legal, not equitable), the equity of the case was with the defendant under Wilson's contract. Wilson, it was shown, had done all that was necessary to be done to entitle him to the patent, excepting the payment of the survey and patent fees. But as to these, as we have already stated,

[Brock *v.* Savage.]

there was no liability on his part to pay according to the terms
of the contract until he had notice of the return of the surveys
into the land office, and that they were ready for patenting.
By the terms of the bargain, the duty lay on Chambers & McNutt
of making and returning the surveys, that is, causing them to be
done, so that before notice of the returns, Wilson was not bound
to pay these fees. Now it is clear that an ejectment against
Wilson as a substitute for a bill to enforce performance, would
not lie till notice of the return was given. Of such notice there
is no evidence.

But there is a graver objection to the plaintiff's right to use
this ejectment, which arises under the first point on which the
court was requested to charge, to wit, an objection to the plain-
tiff's title.

The first point asked the court to say that the plaintiff, having
shown a perfect legal title, was entitled to recover, unless the
defendant has shown a superior title. This was affirmed, but the
answer could not be assigned for error.

The court was not fully justified in the answer given, the very
point having been decided by this court in Smith *v.* Webster, 2
Watts 478, a case I do not notice in the paper-books. There, as
here, the patentee had no evidence of his right to the patent
except the recitals of conveyances in the patent, and this court
not only decided as a question of evidence that the recitals were
not evidence of title in the patentee, but went further and decided
that as the contract of purchase bore date before the patent, the
patentee or his successor to the title could not use it to turn out
the vendee under the prior contract, or enforce payment of the
purchase-money. As against the vendee, the recitals in the
patent not being evidence, in order to enforce payment of the
purchase-money, he must show that he is entitled to the benefit
of the contract, and is capable of making the vendee a good title
in pursuance of its terms.

So precisely stands Charles Young in this case. His patents
are dated in 1796, Wilson's contract in 1794. What right has
Charles Young to the purchase-money of Wilson's contract?
He has shown none—his only evidence is the recital, and this is
insufficient against Wilson, who claims by a prior purchase from
Chambers & McNutt. Young cannot therefore recover by force
of his mere patent, for he holds this in trust for Wilson, unless
it can be shown that Wilson's contract was rescinded or aban-
doned in equity, and we have already seen that all the evidence
points the other way. This disposes of all the points, as the
argument covers their whole ground.

As to the exceptions to the evidence referred to in the first,
second, third, and fourth assignments of error, it is only neces-
sary to say that all the matters contained in them tended to

[*Brock v. Savage.*]

show the continued control over these lands by Morgan and his assignees, and assertion of title under Wilson's contract. They were therefore evidence.

I must not omit to say that the same title was before the court in the case of Bank *v.* Savage, 7 Casey 410, and the same result was there reached; not, it is true, by the same mode of development, but through the application in the main of the same general principles of equity.

The judgment of the court below must be affirmed.