**MATANUSKA VALLEY BANK, Appellant,**

v.

**Nona ABERNATHY, Appellee.**

**Nona ABERNATHY, Appellant,**

v.

**MATANUSKA VALLEY BANK, Appellee.**

**Nos. 893, 895.**

Supreme Court of Alaska.

Sept. 16, 1968.

Allen McGrath, Eric E. Wohlforth, Anchorage, for appellant.

Helen L. Simpson, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

NESBETT, Chief Justice.

These appeals result from litigation which grew out of the purchase by Nona Abernathy and her husband, now deceased, of the Copper Kettle Roadhouse located on the Glenn Highway. At the time of the purchase the property was being foreclosed by the Matanuska Valley Bank, hereinafter referred to as the Bank, against a prior purchaser named Goolsby.

The real property described in the sale agreement executed by the parties was located on both sides of the existing highway. Unknown to both parties at the time they entered into the agreement, Public Land Order No. 1613 had been in effect for approximately six years. This Order reserved to the United States an easement 150 feet wide on each side of the Glenn Highway and prohibited the area from being used for other than highway, telegraph, or pipeline purposes. Abernathy learned of the existence of the easement on July 21, 1965, some 13 months after execution of the sale agreement. By measurement it was then ascertained by Abernathy that a substantial portion of the main roadhouse building and a portion of the related buildings were located within the highway easement.

Abernathy immediately notified the Bank and was advised not to "panic," that the problem could be worked out. By letter dated October 12, 1965, Abernathy rescinded the sale agreement, tendered a return of the property, demanded return of payments made, the cost of improvements made, and reimbursement for taxes and insurance premiums paid in the total sum of $12,500.

On February 10, 1966, Abernathy commenced an action seeking recision of the sale agreement. The trial court found that the buildings were the principal consideration and were located substantially in the area reserved by the easement. The court's Conclusion of Law No. 1 stated:

1. That defendant is unable to convey to plaintiff a substantial portion of the property under the Sales Agreement due to mutual and substantial mistake of the parties.

We shall consider first the points raised by appellant Bank in File No. 893.

■ Appellant's main point questions the validity of the court's conclusion that the parties contracted under a mutual mistake of fact. Appellant's argument is that ignorance by both parties of the existence of the easement cannot legally support a finding that the parties acted under a mutual mistake of fact. The Bank relies upon the authority of McNeely v. Philadelphia National Bank[1] where the court defined mutual mistake of fact as:

\* \* \* a clear impression in the minds of the parties as to the existence of a material fact, sufficient in importance to influence and govern a man of ordinary intelligence, and on which both parties relied and acted, which fact did not exist.

The Bank contends that since the parties were acting in total ignorance of the fact that the easement existed, they were not acting under an erroneous impression concerning a material fact.

We are of the opinion that the trial court was correct in ordering recision based on its finding that the parties had acted under a mutual mistake of fact. The evidence supports the conclusion that the Abernathys purchased the land and buildings for the sole purpose of engaging in the business of operating a roadhouse. The land and buildings were adapted to and had previously been used for this purpose. There can be no question but that both parties were of the belief, and acted in reliance upon their belief, that the buildings constituting the Copper Kettle, which were necessary for the conduct of the roadhouse business, were located on land which would continue to be available for this purpose. Both parties were mistaken in this belief. A substantial portion of the roadhouse buildings were located on land under the permanent control of the United States. The terrain was such that the cost of moving the buildings was greater than their worth.

Appellant's contention that clear and convincing proof of mutual mistake of fact was not produced is without merit. Appellee testified that she and her husband had discussed and corresponded with the Bank for approximately two years concerning acquiring a restaurant or roadhouse in Alaska; that the Bank eventually advised them of the availability of the Copper Kettle premises; that the inspections they had made of the premises caused them to notice that the roadhouse buildings were, as Nona Abernathy testified,

set quite a ways off of the highway and that there was ap—ample parking room an—room there so it [the location of the boundary lines] never entered my mind.

and that after learning of the easement, actual measurement disclosed that a substantial portion of the buildings were located within the right-of-way.

The inferences to be drawn from the above testimony and the fact that the Abernathys were obligating themselves to pay the Bank $30,000 for the premises and furnishings was evidence of sufficient strength to support the court's finding that "the buildings were the principal consideration in the purchase" and its conclusion that the

---

1. 314 Pa. 334, 172 A. 111, 112 (1934).

parties were mutually mistaken regarding the status of the buildings.

The Bank argues that since paragraph 8 of the sale agreement only required it to "deed all of its interest in said real property to the Buyer"[2] and paragraph 10 specifically provided for delivery of a quitclaim deed,[3] that it had fully performed its obligation under the sale agreement.

In this argument the Bank emphasizes that the sale contract repeatedly refers to the real property involved in the sale, but refers to the "Copper Kettle" and the buildings only once. The Bank points out that although the sale agreement in paragraph six states in part that:

> [the buyer] * * * is prepared to await the delivery of clear title to said real property to them until the Bank has concluded foreclosure proceedings * *.

any implication that the Bank was required to convey any other title than that obtained through the foreclosure proceedings is negated by the provisions contained in paragraphs 8 and 10 just quoted. The Bank's position is that it was contracting in accordance with sound business practice and not binding itself to deliver a "title free of encumbrances and restrictions since it was ignorant as to whether or not such encumbrances or restrictions then existed." In this connection the Bank goes on to state:

> It did not know what title it would ultimately get from A. E. Goolsby since Goolsby himself at the time had no title to the property. Possibly the bank could have ascertained the existence of the highway easement but it chose not to do so and instead placed the risk of encumbrances and restrictions squarely on the appellee, Nona Abernathy and her late husband.

The Bank's argument does not deal with the full scope of the problem presented. As Abernathy points out, it was not just the fact that an encumbrance in the form of a highway right-of-way was later found to exist that persuaded the trial court to order recision. Rather, it was the fact that most of the buildings necessary to the conduct of a roadhouse were later found to be located within the right-of-way. The mutual assumption of the parties that the buildings were suitably located for their continued use for roadhouse purposes was found to be erroneous.

We assign no weight to the Bank's argument that the reserved right-of-way detracted from the beneficial use of only a portion of the real property. The undisputed facts are that the portion which was affected contained most of the roadhouse buildings. Abernathy was denied the beneficial use of the only part of the real property which could have served the purpose for which the contract was made.

The Bank points out that the mere fact that a highway easement covered a portion of the real property here involved did not prevent it from conveying title to the full tract to the Abernathys. We agree. The Bank was able to convey legal title to the full tract, but because of the easement could not convey a full beneficial use to a part of the real property upon which the roadhouse buildings were located. Since the trial court's Finding of Fact No. 7 and Conclusion of Law No. 1 both refer to the Bank's inability to "convey the property in its entirety" and inability to "convey to plaintiff a substantial portion of the property," they are in error and upon remand must be amended so as to be consistent with the holdings herein.

2. Paragraph 8 read:
   The BANK further agrees that, immediately thereafter [referring to purchase at the foreclosure sale] the BANK will deed all of its interest in said real property to the BUYER in consideration of the BUYER'S execution and delivery to the BANK of a Deed of Trust Promissory Note * * *.

3. Paragraph 10 stated:
   The BUYER agrees that, upon delivery by the BANK to BUYER of the BANK'S Quitclaim Deed to said real property, then the BUYER will execute and deliver to the BANK the Promissory Note * * *.

■ The Bank's last point is that Abernathy had a duty to investigate at the land office and upon investigation would have learned of the numerous restrictions and encumbrances that were to be contained in the title when it eventually issued. The authorities cited by the Bank denying recision and other relief are not applicable where it has been found that the parties contracted under a mutual mistake of fact. In addition, it is quite possible that the Abernathys were misled into a belief that a beneficial title to the full tract would be forthcoming from the representation in the sale agreement by the Bank that it had been advised by the United States that patent would issue within a week after execution of the sale agreement.[4] The logical inference to be drawn from this representation is that the Bank had made specific inquiry and had learned nothing which would prevent it from conveying a full beneficial use of the land upon which the roadhouse buildings were located.

We next consider the issues raised by cross-appellant Abernathy in File No. 895.

In its judgment the trial court awarded Abernathy the sum of $6,217.63, representing the amount paid on the principal of the sale agreement, plus interest in the amount of $994.74 and an attorney's fee of $1,149.95. The Bank was awarded the sum of $1,000, plus interest in the amount of $213.28 in connection with a personal loan Abernathy had negotiated during the time she was in possession of the Copper Kettle.

Abernathy's contentions are that she was entitled to recover the entire amount paid to the Bank on the contract, including interest paid, plus interest on payments made from the date of payment; all amounts expended by her for permanent improvements; the cost of insurance and for taxes paid; her expenditures in maintaining and keeping the building, plus her losses incurred as a result of the frustration of her business plans.

■ Since recision was ordered because of the inability of the Bank to convey a beneficial title to a substantial portion of the property, Abernathy was entitled to a return of all of the money paid on the purchase price, including interest and of any amount expended in payment of taxes, plus interest on said sums.[5] In addition, Abernathy was entitled to reimbursement for monies expended for permanent improvements made to the property[6] and for monies expended to provide fire insurance coverage on the buildings. The Bank is entitled to the fair rental value of the property for such period of time as is appropriately chargeable against Abernathy.[7] In the absence of bad faith on the part of the Bank, and there appears to be no claim that the Bank acted in bad faith, Abernathy is not entitled to damages for frustration of her business venture.[8]

■ Abernathy contends that she should be allowed her costs expended in maintaining and keeping the roadhouse buildings between October 12, 1965, the date she gave notice of recision of the contract, and January 8, 1966, when she vacated the property. Substantiation of these costs is alleged to be contained in Plaintiff's exhibit 11. An examination of this document sheds no light whatever on the matter in question, the exhibit being nothing more than a list of monies expended during 1965 by item

---

4. Paragraph 2 of the Sale Agreement stated:

 Title to said real property at this time is in the United States of America; however, Albert Edward Goolsby has made application for patent under application No. 047282, publication was authorized under date of April 10, 1963; *and the BANK has been advised by the United States of America that patent will issue in the name of Albert Edward Goolsby on or shortly after June 15, 1964.* (emphasis supplied).

5. Cole v. Atkins, 69 Ariz. 81, 209 P.2d 859, 861 (1949); Oman v. City of Wayne, 152 Neb. 341, 40 N.W.2d 916, 920 (1950).

6. McMahon v. Cooper, 70 Idaho 139, 212 P.2d 657, 661 (1949).

7. Id. at 661; Newmyer v. Roush, 21 Idaho 106, 120 P. 464 (1912).

8. Cole v. Atkins, supra note 5.

and amount only. No dates or purposes are indicated. No reference is made to any portion of the transcript of testimony which might explain that portion of exhibit 11 which is applicable to 1965. Under these circumstances we shall not attempt to consider the question raised except to state that upon remand the trial court should permit the introduction of evidence which would explain Abernathy's status on the property between the dates mentioned. If she remained on the property for the convenience of the Bank, then she should be reimbursed for her costs in maintaining and keeping the buildings. If she remained on the property for her own convenience, then she is not entitled to such costs.

The case is remanded to the trial court for the ascertainment of the facts necessary to the entry of an amended judgment consistent with the views expressed in this opinion.